**Jack Howard POTTS, Petitioner-Appellee, Cross-Appellant,**

v.

**Walter D. ZANT, Warden, Georgia Diagnostic and Classification Center, Respondent-Appellant, Cross-Appellee.**

No. 83–8087.

United States Court of Appeals, Eleventh Circuit.

May 29, 1984.

---

3. In such event, where a remand is not otherwise required, the district court should simply affirm.

Susan V. Boleyn, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellant, cross-appellee.

Millard C. Farmer, Atlanta, Ga., for petitioner-appellee, cross-appellant.

Before HILL and VANCE, Circuit Judges, and TUTTLE, Senior Circuit Judge.

VANCE, Circuit Judge:

The state of Georgia appeals, and the petitioner cross-appeals, the decision of the district court granting habeas corpus relief in both of the cases involved in this consolidated proceeding. *Potts v. Zant,* 575 F.Supp. 374 (N.D.Ga.1983). We reach the same result as the district court, requiring a new guilt/innocence trial in No. C80–1078A and a new sentencing trial in No. C80–50G.

The petitioner in these proceedings, Jackie Potts, was charged with armed robbery, aggravated assault, and kidnapping with bodily injury in Cobb County and with murder in Forsyth County as a result of a violent spree on May 8, 1975. Specifically, Potts was accused of shooting and robbing Eugene Snyder and abducting and robbing Michael Priest in Cobb County before murdering Priest in Forsyth County. Potts was convicted of kidnapping, aggravated assault, and two counts of armed robbery in Cobb County, and of murder in Forsyth County. He received three death sentences: one on the kidnapping charge in Cobb County, a second on one of the armed robbery counts in Cobb County, and a third on the murder charge in Forsyth County. The Georgia Supreme Court subsequently vacated the death sentence on the Cobb County armed robbery charge on direct appeal. *Potts v. State,* 241 Ga. 67, 243 S.E.2d 510 (1978).

After unsuccessfully seeking state habeas corpus relief, Potts authorized the filing of an initial set of petitions under 28 U.S.C. § 2254 attacking his convictions and two remaining death sentences within hours of his scheduled execution on June 5, 1980. Less than two days later, Potts sought to withdraw this authorization so that he might die while in a "state of grace" with God. Following a hearing on June 10, the district court granted Potts' request on June 13, and a new execution date was set for July 1, 1980. On June 25, however, Potts authorized the filing of a second set of federal habeas corpus petitions. The district court held a hearing on the legal issues involved on June 26, but refused an offer by Potts' attorneys to present evidence demonstrating the involuntariness of his decision to withdraw the first set of petitions. The district court found an abuse of the writ with regard to Potts' filing of the second set of petitions on the grounds that he had voluntarily relinquished his rights by withdrawing the first set of petitions, and again refused a request by Potts' attorneys for an evidentiary hearing on the issue of abuse. On appeal, this court ruled that the district court had erred in denying the petitioner an evidentiary hearing after the filing of the second set of identical petitions and remanded the case with instructions to afford Potts an opportunity to rebut the state's allegations of abuse and to demonstrate why his initial withdrawal of the first set of petitions had not been knowing and voluntary. *Potts v. Zant,* 638 F.2d 727 (5th Cir. Unit B) [*Potts I*], *cert. denied,* 454 U.S. 877, 102 S.Ct. 357, 70 L.Ed.2d 187 (1981). The panel further noted that even if the district court should find that it was possible to dismiss such a successive petition without consideration of the merits, the ends of justice might require that it reach the merits of the petition. *Id.* at 751–52.

Potts' attorneys subsequently filed in the district court a motion for partial summary judgment on the issue of abuse. Applying the test of *Sanders v. United States,* 373 U.S. 1, 18, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963), the district court concluded that there was no evidence to support the state's claim that Potts' actions had been taken in bad faith or in order to "vex, harass, or delay" the court. The district court therefore granted the motion for partial summary judgment. *Potts v. Zant,* Nos. C80–1078A & C80–50G (N.D.Ga., May 17, 1982). An evidentiary hearing on the substantive issues in the case was held on June 4, 1982, and the district court entered its order granting the writ on January 6, 1983. The district court vacated Potts' conviction on the kidnapping charge in Cobb County, since it found that the trial court had failed to instruct the jury on the law of kidnapping with bodily injury and the jury had returned a verdict which did not clearly find Potts guilty of anything more than "simple" kidnapping, which is not a capital offense. With regard to the Forsyth County proceedings, the district court found that the inflammatory and improper arguments used by the prosecutor required a new sentencing trial, but it rejected the petitioner's contentions that his Forsyth County murder conviction constituted a violation of the fifth amendment prohibition against double jeopardy and that the jury instructions of the trial judge improperly shifted the burden of proof on the element of intent. The state appealed, and the petitioner cross-appealed the adverse judgment of the district court on the Forsyth County issues.

Before we address the substantive contentions raised by the state and the petitioner on appeal, it is first necessary for us to consider whether the district court acted properly in granting Potts' motion for partial summary judgment on the question of abuse of the writ. The state contends that this court's decision in *Potts I* mandated the holding of an evidentiary hearing and that it was error for the district court to refuse to do so. It is clear from this court's decision in *Potts I* and

leading precedents such as *Price v. Johnston,* 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948), however, that a hearing on the issue of abuse of the writ is necessary only when there is "a substantial conflict" as to the actual facts involved. *Price v. Johnston,* 334 U.S. at 292, 68 S.Ct. at 1063. The district court in this case found that there were no disputed issues of material fact with regard to Potts' reasons for authorizing and subsequently withdrawing his first set of petitions, and held as a matter of law that the facts established in Potts' affidavit and the record of the two previous hearings failed to support the state's claim of bad faith. We see no reason to disturb this holding on appeal, particularly since this court emphasized in *Potts I* that the ends of justice might require the district court to consider the merits of petitioner's complaint even if there did appear to be a colorable basis for the state's claim of abuse. In cases in which a man's life is at stake and he has not had an opportunity to secure federal review of the alleged constitutional defects in his conviction and sentence, the state must meet a heavy burden when it argues that the petitioner's misconduct is sufficiently grave to warrant the sanction of dismissal. We have no hesitation in concluding that the state has failed to carry that burden in the present instance, and we therefore proceed to a consideration of the merits of this appeal.

## I. THE KIDNAPPING VERDICT

The petitioner challenges his conviction and death sentence on Count III of the Cobb County indictment on the grounds that the jury's verdict found him guilty only of "simple" kidnapping, which is not a capital offense, rather than kidnapping with bodily injury, which is a capital offense under Georgia law. Off.Code Ga. Ann. § 16–5–40 (1982). The state contends that since the jury's verdict at the guilt/innocence trial clearly found Potts guilty on Count III, which charged that Potts abducted Michael Priest and then killed him, we can infer that the jury intended to find the petitioner guilty of kidnapping with

bodily injury, rather than the lesser included offense of "simple" kidnapping. This confusion arises from the form of the jury's verdict, which stated simply that "We, the jury, find the defendant guilty as to Count Three, kidnapping." The jury's verdict at the sentencing trial heightened rather than lessened this ambiguity. The jury was instructed on several possible aggravating circumstances, including that "[t]he offense of kidnapping of Michael Priest was committed while the offender was engaged in the commission of another capital felony, to-wit: murder of Michael Priest." The jury, however, declined to list this as an aggravating circumstance supporting its decision to impose the death penalty on Count III and instead based its death sentence on the aggravating circumstance that the kidnapping was committed during the course of an armed robbery.

■ While there is thus some degree of uncertainty as to what the Cobb County jury intended to find with regard to the kidnapping charge, the central problem here is the fact that the Cobb County trial judge never offered the jury any specific instructions on the importance of a finding of bodily injury, omitting any reference to this element of the offense in the instructions he utilized at both the guilt/innocence trial and the sentencing trial.[1] Because a finding of bodily injury to the victim is essential to support the imposition of the death penalty for the crime of kidnapping under Georgia law, we cannot treat this flaw in the jury instructions lightly. The Supreme Court has stressed that "[w]hen a

defendant's life is at stake, [courts must be] particularly sensitive to insure that every safeguard is observed." *Gregg v. Georgia*, 428 U.S. 153, 187, 96 S.Ct. 2909, 2931, 49 L.Ed.2d 859 (1976) (plurality opinion). This standard obviously has not been met when a trial judge fails to instruct the jury on an element of a crime that is essential to support a death sentence for that offense. *Cf.* 2 C. Wright, Federal Practice & Procedure: Criminal 2d § 487 ("It is a grave error to submit a case to a jury without accurately defining the offense charged and its elements. Such an error is not excused or waived by failure to request a proper instruction."); *see also United States v. Herzog*, 632 F.2d 469, 472 (5th Cir.1980) ("A trial court has the obligation to instruct the jury on *all* the essential elements of the crime charged, even though the defendant fails to request such an instruction.") (emphasis in the original).[2] We therefore conclude that the inadequacy of the trial judge's instructions at both the guilt/innocence and sentencing trials in Cobb County deprived the petitioner of due process of law. The writ must issue unless a new trial is held on both guilt/innocence and sentencing. Because we conclude that retrial is required on this ground, we do not reach the other challenges raised by the petitioner to the validity of his Cobb County conviction.

## II. THE DOUBLE JEOPARDY ISSUE

The petitioner also challenges his conviction on the Forsyth County murder charge,

---

1. The respondent argues that the trial judge was not required to instruct the jury on the law of kidnapping with bodily injury, pointing out that the state supreme court has held that "bodily injury is a term of common usage requiring no legal definition." *Smith v. State*, 236 Ga. 5, 222 S.E.2d 357, 361 (1976). This contention misses the point. The trial judge here never even used the phrase "with bodily injury" in his instructions, and completely failed to explain to the jury that it was critically important for them to distinguish between a finding of "simple" kidnapping and kidnapping with bodily injury.

2. We find additional support for this conclusion in the Georgia Supreme Court's decision in *Patrick v. State*, 247 Ga. 168, 274 S.E.2d 570 (1981),

*cert. denied*, 459 U.S. 1089, 103 S.Ct. 575, 74 L.Ed.2d 936 (1982). In that case, the trial judge charged the jury that the fact that a murder was committed during the course of "another capital felony, to-wit: a Kidnapping," could constitute an aggravating circumstance that would warrant imposition of the death penalty. The jury's verdict stated simply that an aggravating circumstance existed because the murder was committed during the course of a "kidnapping." Emphasizing that "[s]imple kidnapping is not a capital felony," the Georgia Supreme Court ruled that "the jury's finding of 'kidnapping' in this case cannot support the death penalty." *Id.*, 274 S.E.2d at 572.

asserting that it constitutes a violation of the constitutional prohibition against double jeopardy. Potts argues that it is improper for the state to seek two capital convictions—for kidnapping with bodily injury in Cobb County and for murder in Forsyth County—as a result of his participation in a single incident: the kidnapping and subsequent murder of Michael Priest. The petitioner further contends that the action of the Cobb County jury in returning a verdict that stated simply that the defendant was guilty of "kidnapping" constitutes an acquittal on the charge of kidnapping with bodily injury and a finding of guilt on the lesser included offense of "simple" kidnapping, and therefore bars a second capital prosecution, for murder, on the same set of facts.

■ The Supreme Court has recognized that the double jeopardy clause consists of three separate constitutional protections. It protects against a second prosecution for the same offense after conviction; it bars a second prosecution for the same offense after acquittal; and it prohibits multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The petitioner asserts that his murder conviction in Forsyth County constitutes a violation of the second and third of these guarantees. We conclude that his arguments are without merit.

■ The critical question under either of the theories advanced by the petitioner is whether kidnapping with bodily injury and malice murder can be considered the same offense. The established test for determining whether two offenses are sufficiently distinguishable to avoid the prohibition against double jeopardy was set forth by the Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), in which it was held that the determining factor is whether "each provision requires proof of a fact which the other does not." *Id.* at 304, 52 S.Ct. at 182. Thus, as long as each offense "requires proof of a different element," *id.,* and the facts necessary to prove each offense are not sufficient to prove the other offense, *Brown v. Ohio,* 432 U.S. 161, 166–68, 97 S.Ct. 2221, 2225–26, 53 L.Ed.2d 187 (1977), there is no violation of the double jeopardy clause. Applying this analysis to the issue raised by the petitioner, both this court and the Georgia Supreme Court have concluded that kidnapping with bodily injury and malice murder are not the same offense. The state supreme court first considered this issue in *Pryor v. State,* 238 Ga. 698, 234 S.E.2d 918, *cert. denied,* 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977), in which it held that the two crimes are not the same as a matter of law because

> [k]idnapping with bodily injury requires an unlawful abduction or stealing away and the holding of a person, plus the infliction of some bodily injury upon that person. The crime of murder is committed when one causes the *death* of another with the peculiar mental state of express or implied malice. As a matter of *law,* because of the different elements of the crimes, murder is not included within kidnapping with bodily injury.

*Id.* 234 S.E.2d at 923 (emphasis in the original). This conclusion was subsequently reaffirmed on the direct appeal of this case, *Potts v. State,* 241 Ga. 67, 243 S.E.2d 510, 519–20 (1978), and in *Stephens v. Hopper,* 241 Ga. 596, 247 S.E.2d 92, 95, *cert. denied,* 439 U.S. 991, 99 S.Ct. 593, 58 L.Ed.2d 667 (1978). In these decisions the state supreme court made it clear that the two crimes are also distinct as a matter of fact, since proof of different facts is required by the elements of each offense. Similarly, this court concluded in *Stephens v. Zant* that "[m]alice murder and kidnapping with bodily injury have separate and distinct elements and require proof of different facts.... Thus, even if they involve the same transaction and considerably overlap each other factually, they are not the 'same offense' under *Blockburger.*" 631 F.2d 397, 401 (5th Cir.1980), *modified,* 648 F.2d 446 (5th Cir.1981), *rev'd on other grounds,* — U.S. ——, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).

The petitioner argues strenuously that *Pryor* is factually distinguishable because the victim in that case suffered other, non-fatal physical injuries that were independently sufficient to support the kidnapping with bodily injury charge, whereas in this case there was only one injury to the victim—the gunshot wound which killed him. Potts contends that the state supreme court's decision in this case was an incorrect application of Georgia law and that the correct state law principle is that evidence of a single act may not be used to sustain multiple felony convictions. On collateral review, however, this court can concern itself only with alleged violations of federal constitutional rights, and it is clear that federal jurisprudence accords significantly less protection to the accused under the double jeopardy clause than Georgia has elected to provide under Off. Code Ga.Ann. §§ 16–1–6, –7, and –8. Thus, while the Georgia courts have held that "a crime is an included crime and multiple punishment therefor is barred if it is the same as a matter of fact *or* as a matter of law," *State v. Estevez*, 232 Ga. 316, 206 S.E.2d 475, 478 (1974) (emphasis in the original), the federal courts have used a narrower test, phrasing it in the conjunctive rather than the alternative. *See, e.g., United States v. Henry*, 661 F.2d 894, 896 (5th Cir. Unit B 1981), *cert. denied*, 455 U.S. 992, 102 S.Ct. 1619, 71 L.Ed.2d 853 (1982) ("To succeed on a claim of double jeopardy, a defendant must show that in law *and* fact the two offenses charged are in reality the same.") (emphasis added); *United States v. Cala*, 521 F.2d 605, 607 (2d Cir.1975). Thus, regardless of whether the state supreme court correctly interpreted Georgia's double jeopardy statute on the direct appeal in this case, it is clear under *Blockburger* as a matter of federal constitutional law that a single act may form the basis for prosecutions under two separate statutes if different elements of proof are required. In *Blockburger* itself, the Court held that a single sale of narcotics could subject the defendant to liability for the separate offenses of selling morphine from a package without the required customs stamps and selling drugs without a written order from the purchaser. The *Blockburger* Court supported its conclusion by quoting *Morey v. Commonwealth*, 108 Mass. 433, 434 (1871), which held that " '[a] single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.' " 284 U.S. at 304, 52 S.Ct. at 182; *see also Gavieres v. United States*, 220 U.S. 338, 342–43, 31 S.Ct. 421, 422–23, 55 L.Ed. 489 (1911).

Federal law therefore clearly permits a defendant to be prosecuted on two separate offenses arising out of the same set of facts as long as each offense requires the proof of an additional fact or element which the other does not. Because malice murder and kidnapping with bodily injury are not the "same offense" under the *Blockburger* test, *Stephens v. Zant, supra*, we conclude that the petitioner's murder conviction in Forsyth County did not violate the constitutional prohibition against double jeopardy.

## III. THE FORSYTH COUNTY JURY INSTRUCTIONS

The petitioner also argues that the jury instructions utilized at his Forsyth County murder trial impermissibly shifted the burden of proof from the state to the defendant on the key issue of intent. Specifically, the petitioner points to these statements by the trial court judge as being impermissible under *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and *Mason v. Balkcom*, 669 F.2d 222 (5th Cir. Unit B 1982), *cert. denied*, 460 U.S. 1016, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983):

A specific intent to commit the crime of murder charged in this Indictment is an essential element that the State of Georgia must prove beyond a reasonable doubt. Intent is always a question for the jury, and as I have said, it is ordinarily ascertained by acts and conduct. But intent may be shown in many ways, pro-

vided that you jurors find that intent existed from the evidence produced before you.

Intent may be inferred from the proven circumstances, *or it may be presumed, when it is the natural and the probable consequences of the act for which the defendant is being prosecuted.*

I also want to give you certain presumptions of law that are applicable to this case. Now a presumption of law is a conclusion which the law draws from given facts. Each one of these presumptions of law that I am going to give you are rebuttable. That is, they are subject to being overcome by evidence to the contrary.

There are three of them.

1. *Every person is presumed to be of sound mind and discretion.*

As I have said that presumption is subject to being overcome by evidence to the contrary.

2. *The acts of a person of sound mind and discretion are presumed to be the product of that person's will.*

3. *A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts.*

As I have said, these presumptions of law are rebuttable. That is they are subject to being overcome by evidence to the contrary.

The petitioner contends that the italicized passages are constitutionally invalid under *Sandstrom* and *Mason.* In *Sandstrom,* the Supreme Court ruled that the charge, "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts," without more, might well have misled a reasonable juror into believing that the presumption was either irrebuttable or subject to disproof only if the defendant could demonstrate the contrary "by some quantum of proof which may well have been considerably greater than 'some' evi-

dence—thus effectively shifting the burden of persuasion on the element of intent." 442 U.S. at 517, 99 S.Ct. at 2455. Similarly, this court held in *Mason* that a charge stating that "the law presumes that a person intends to accomplish the natural and probable consequences of his conduct" was impermissible under the *Sandstrom* rule. 669 F.2d at 225. Despite some apparent similarities, however, we conclude that the disputed passages of the charge in this case are distinguishable from those condemned in *Sandstrom* and *Mason* and did not relieve the state of its burden of proving all essential elements of the crime beyond a reasonable doubt.

 In analyzing challenges to criminal convictions based on allegedly improper jury instructions, we must begin with the well-established proposition that

a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge....

... [T]he question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.

*Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). In this case, the petitioner challenges two passages in the trial court's jury instructions. The first of these—which stated that "[i]ntent may be inferred from the proven circumstances, or it may be presumed, when it is the natural and probable consequences of the act for which the defendant is being prosecuted"—is virtually identical to that approved by this court in *Hance v. Zant,* 696 F.2d 940, 953 (11th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983).[3] The *Hance* court stressed that the use of permissive language such as "may be presumed" substantially reduced the likelihood that a reasonable juror would conclude that the in-

---

**3.** The trial court in *Hance* instructed the jury that intent "may be inferred from the proven circumstances or by acts and conduct, or it may

be presumed when it is the natural and necessary consequence of the act." 696 F.2d at 953.

struction required an inference of intent. *See also Lamb v. Jernigan,* 683 F.2d 1332, 1339 (11th Cir.1982), *cert. denied,* 460 U.S. 1024, 103 S.Ct. 1276, 75 L.Ed.2d 496 (1983) (approving an instruction stating that intent "may be inferred ... from proven circumstances or by the acts and conduct of the defendant or [ ] may be presumed when it would be the natural and necessary consequence of the particular acts"). We therefore find no error with regard to this passage in the instructions.

■ The second passage challenged by the petitioner consists of a set of three presumptions, each of which uses the mandatory phrasing "is presumed." As we have seen, however, we must consider the charge as a whole in order to determine whether this language may have misled the jury into believing that these presumptions were mandatory rather than permissive in character. We conclude that, for a variety of reasons, the overall effect of the charge delivered here was such that it is unlikely that a reasonable juror would have given these presumptions conclusive or persuasion-shifting effect. First, with regard to the last of the three presumptions, the trial judge was simply restating what he had said a moment earlier while using the permissive language "may be inferred" and "may be presumed." Second, the trial judge repeatedly stated that these presumptions were "rebuttable" and "subject to being overcome by evidence to the contrary," a fact which clearly serves to distinguish this case from *Sandstrom,* in which the Supreme Court specifically noted that the jurors "were not told that the presumption could be rebutted ... by the defendant's simple presentation of 'some' evidence; nor even that it could be rebutted at all." 442 U.S. at 517, 99 S.Ct. at 2455; *see also Corn v. Zant,* 708 F.2d 549, 559 (11th Cir.1983).

Finally, unlike the instructions disapproved in *Sandstrom* and *Mason,* the charge in this case contained other language similar to that endorsed by this court in *Lamb v. Jernigan* as reducing the likelihood that the jury might misunderstand the permissive character of these presumptions. In *Lamb,* the court noted that the instructions "informed the jury of the presumption of innocence, and the state's burden of proof beyond a reasonable doubt. Moreover the jury was specifically instructed that intent is an essential element to be determined by it *from the evidence* produced at trial." 683 F.2d at 1339 (emphasis in the original) (footnote omitted). The instructions at issue here contain similar language on all of these points. For example, the trial court stated that "a person will not be presumed to act with criminal intention, but you jurors, who are the triers of the facts of the case may find criminal intention, upon consideration of the words, the conduct, the demeanor, the motive, and all the other circumstances connected with the act for which this defendant Potts is being prosecuted." Elsewhere in the instructions the trial court emphasized that "a crime is a union or a joint operation of act and intention. An intention is an essential element of any crime, and that burden is on the State to prove such intention beyond a reasonable doubt." With regard to the insanity defense that Potts raised in the Forsyth County proceedings, the trial court stressed that

> the burden is not on this defendant to disprove intention. When the defendant introduces some competent evidence of insanity, which might tend to negate evil intention in the defendant at the time of the commission of the alleged crime, then the burden falls upon the State to prove beyond a reasonable doubt that the defendant was sane at the time of the alleged crime, and therefore he had the requisite criminal intent.

Toward the end of the instructions, the trial judge reiterated that "a person will not be presumed to act with criminal intention" and carefully set forth the burdens of proof with regard to the insanity defense raised by Potts, emphasizing that "[i]t is not necessary that this defendant produce evidence of his insanity sufficient to convince you beyond all reasonable doubt, but rather it is only necessary for him to intro-

duce some competent evidence of his insanity."

In short, the instructions viewed as a whole clearly do not shift the burden of proof on the issue of intent. The trial judge stated no less than three times that criminal intent would not be presumed and must be proved by the state beyond a reasonable doubt, and his instructions adequately set forth the evidentiary burdens with regard to the insanity defense. We therefore conclude that the instructions utilized in the Forsyth County proceedings were constitutionally acceptable under *Sandstrom* and the jurisprudence of this circuit.

## IV. PROSECUTORIAL MISCONDUCT

The petitioner also contends that his death sentence on the murder charge in Forsyth County should be invalidated because the prosecutor made improper remarks during his closing argument at the sentencing trial. In his summation, the district attorney over objection read excerpts from the Supreme Court's decision in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976),[4] and the Georgia Supreme Court's decision in *Eberhart v. State,* 47 Ga. 598 (1873).[5] The petitioner argues that the reading of these passages was an improper attempt to suggest to the jurors that it was their legal duty to impose the death penalty. We agree that the reading from *Eberhart* was improper and therefore remand this case for a new sentencing trial in Forsyth County.

Initially, we note that in reviewing a habeas corpus petitioner's claim of prosecutorial misconduct in the context of a jury argument, our standard of review is the narrow one of due process, rather than the broad exercise of supervisory power that federal appellate tribunals possess with regard to their own trial courts. *Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). Thus, the petitioner must establish that the prosecutor's allegedly improper remarks were sufficiently prejudicial to render his trial fundamentally unfair. *Darden v. Wainwright,* 699 F.2d 1031, 1034 (11th Cir.), *vacated,* 715 F.2d 502 (11th Cir.1983), *reinstated in pertinent part,* 725 F.2d 1526, 1532 (11th Cir.1984). The same standard of fundamental fairness governs our examination of allegations of prosecutorial misconduct at both the guilt/innocence trial and the sentencing trial in a capital case. *Id.; Hance v. Zant,* 696 F.2d 940, 953 (11th Cir.1983). Nevertheless, because "it is most important that the sentencing phase of the trial not be influenced by passion, prejudice, or any other arbitrary factor," *id.* at 951, this circuit has recognized that the threshold of fundamental unfairness may be crossed more easily in the latter context.

The *Eberhart* court's florid denunciation of "that sickly sentimentality" that prompts some citizens to oppose the death penalty appears to have made it a particular favorite of Georgia prosecutors, and the propriety of quoting *Eberhart* in the presence of the jury has been considered by the state supreme court on at least four occa-

---

**4.** The prosecutor quoted a passage from Justice Stewart's plurality opinion in *Gregg, see* 428 U.S. at 183–84, 96 S.Ct. at 2929–30, dealing with the retributive function of capital punishment.

**5.** The prosecutor quoted the following passage from *Eberhart,* 47 Ga. at 510:

We have no sympathy with that sickly sentimentality that springs into action whenever a criminal at length is about to suffer for a crime. This may be the sign of a tender heart, but it is also a sight of one not under proper regulation. Society demands that crime be punished, and that criminals be warned, and the false humanity that shudders when justice is about to strike is a dangerous

element for society. We have too much of this mercy. It is not true mercy. It only looks to the criminal. We must insist upon the mercy to society and upon justice for the poor woman whose blood crys (sic) out *against her murderers. That criminals go un-*punished is a disgrace to our civilization. We have reaped the fruits of it in the frequency with which bloody deeds occur. A stern, unbending, unflinching administration of penal laws without regard to position, or sex, as it is the highest mark of civilization, also is the surest mode to prevent the commission of offense.

sions, *see Drake v. State*, 241 Ga. 583, 247 S.E.2d 57 (1978), *cert. denied*, 440 U.S. 928, 99 S.Ct. 1265, 59 L.Ed.2d 485 (1979); *Potts v. State*, 241 Ga. 67, 243 S.E.2d 510 (1978); *Presnell v. State*, 241 Ga. 49, 243 S.E.2d 496 (1978), *rev'd in part on other grounds*, 439 U.S. 14, 99 S.Ct. 235, 58 L.Ed.2d 207 (1979); and *Hawes v. State*, 240 Ga. 327, 240 S.E.2d 833 (1977), and recently by this circuit as well. *Drake v. Francis*, 727 F.2d 990 (11th Cir.1984), *vacated*, 727 F.2d at 1003. The Georgia Supreme Court initially condemned the practice of quoting from *Eberhart* in *Hawes*, stating:

> We do believe, however, that the remarks by the district attorney were improper. It would not have been improper for the district attorney merely to have expressed to the jury the sentiments embodied in the quote from *Eberhart*, supra. [cite omitted] However, the district attorney's attribution of those sentiments to a justice of this court with the object of influencing the jury to impose the death penalty was improper and is disapproved.

240 S.E.2d at 840 (dictum). While *Hawes* did not address the issue of whether the use of *Eberhart* at the sentencing phase would merit a new trial on the question of punishment, the court subsequently declined to apply its criticism retroactively in *Presnell* and *Potts* and held that the use of an *Eberhart* argument did not require new trials in those cases, reasoning that "the written words of a since deceased jurist could not have inflamed the jury more than the facts of the case themselves." *Presnell*, 243 S.E.2d at 507; *see also Potts*, 243 S.E.2d at 523. The court displayed a similar degree of tolerance when the issue was next presented in *Drake*, ruling that it was permissible for the prosecutor to utilize *Eberhart* as long as his remarks were addressed to the court, rather than the jury. The *Drake* court did admonish prosecutors that "it would be preferable if such arguments were conducted outside of the jury's presence." 247 S.E.2d at 60.

The distinction recognized by the state supreme court in *Drake* on the direct appeal of that case was recently rejected by this court in its collateral review of the same proceedings. In *Drake v. Francis*, this court faced a situation virtually identical to the present one. The Georgia prosecutor read the same *Eberhart* excerpt quoted by the district attorney here and also read a passage from *Hawkins v. State*, 25 Ga. 207 (1857). The *Drake* court held that these remarks "so inflamed the passions and prejudices of the jury" as to require that the sentence be vacated and the case remanded for resentencing. 727 F.2d at 996. The court rejected the state's argument that the prosecutor's remarks were acceptable because technically directed to the judge, even though the jury was present and was obviously the intended audience. *Id.*

■ Although *Drake* has been vacated pending rehearing by the *en banc* court, we find its reasoning on this issue persuasive. The district attorney here also prefaced his remarks by stating that they were addressed to the court, but this was an obvious subterfuge; the trial judge had indicated that he was familiar with *Eberhart* before the prosecutor read the quotation in question, and the district attorney turned to the jurors and commenced his formal jury argument as soon as he finished reading the disputed passage. The prosecutor was plainly attempting to suggest to the jury that prior decisions of the state supreme court mandated the imposition of the death penalty in this case, and this conduct was clearly improper. The jury may have been misled into believing that it had a legal duty to return a death sentence and consequently failed to give its decision the independent and unprejudiced consideration the law requires. The writ therefore must be issued with respect to the Forsyth County murder charge unless a resentencing proceeding is held. Because we find that the prosecutor's use of the *Eberhart* argument mandates a retrial on the issue of punishment, we need not address the propriety of the district attorney's practice of quoting from *Gregg v. Georgia*, and we do not reach the other issues raised below that are applicable to

the sentencing trial in the Forsyth County proceedings.

## V. CONCLUSION

Because of the inadequacy of the jury instructions utilized by the Cobb County trial judge with respect to the charge of kidnapping with bodily injury, we affirm the finding of the district court that the writ must issue unless a new trial is granted in Cobb County on the issues of both guilt/innocence and punishment. With regard to the Forsyth County proceedings, we find that the prosecutor's improper comments during the sentencing phase require that the writ issue unless a new sentencing proceeding is ordered and affirm the district court on this issue as well. We conclude that the other issues raised by the petitioner on his cross-appeal are without merit and therefore affirm the judgment of the district court.

AFFIRMED.

JAMES C. HILL, Circuit Judge, concurring specially:

I concur. However, lest my concurrence in Part IV be misconstrued as extending to inferences one might draw from what is there said, I write, briefly, separately.

I find no constitutional fault in a trial advocate's calling to the court's attention principles of law touching upon issues in a case, even though counsel interrupts his own summation to do so. Thus, if counsel is urging the jury to find that reasonable doubt exists as to his client's guilt, I apprehend that he may, then and there, urge the judge to instruct the jury that, if it entertains reasonable doubt, it must acquit, citing precedent requiring such an instruction.

Here, however, the prosecutor did not undertake to call to the judge's attention any authority for any proposition of law. The judgments of the Supreme Court of Georgia were, of course, binding on the Superior Court trying Mr. Potts, but it cannot be said that the quoted remarks of the justice who wrote the opinion for that court in *Eberhart v. State*, 47 Ga. 598 (1873), bound the trial court judge or juror. As presented by the prosecutor, it appeared that the Supreme Court of the state had ruled that "sickly sentimentality," a "tender heart," "false humanity," "mercy," and consideration of the criminal defendant had been declared unlawful in Georgia and that a juror who entertained such feelings would be a lawbreaker.

Yet we are taught by *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1967), that jurors with such feelings and inclinations are qualified to serve if they are willing to abide the law and find the facts without bias. Here, the trial court permitted it to be represented to the contrary and the representation was not corrected.

I apprehend, but do not decide, that I would agree with the Supreme Court of Georgia that "the written words of a since deceased jurist" (*Presnell v. State*, 241 Ga. 49, 243 S.E.2d 496, 507 (1978)) could not have unconstitutionally affected the sentencing procedure. However, the quotation was not of an individual; it was of the Supreme Court of the state. It was not put forth as a person's view; it was proffered as the law. I believe it not to have been the law when written in 1873. At all events, it was not the law at the time of this trial. *Witherspoon* was announced in 1967.

For these reasons, I concur in Part IV; I also concur in all else stated in the opinion.