Joseph WILSON, Jr.,
Petitioner-Appellee,

v.

Ralph KEMP, Warden,
Respondent-Appellant.

No. 84–8481.

United States Court of Appeals,
Eleventh Circuit.

Nov. 18, 1985.

Rehearing and Rehearing En Banc
Denied Feb. 10, 1986.

Mary Beth Westmoreland, Atlanta, Ga.,
for respondent-appellant.

Bruce S. Harvey and Mark V. Spix, Atlanta, Ga., for petitioner-appellee.

Before TJOFLAT, HILL and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

█ This appeal is from the district court's order granting habeas corpus relief to a state prisoner who has been convicted of murder and sentenced to death. We conclude that the prosecutorial argument at the sentencing phase of petitioner's trial rendered the proceeding fundamentally unfair in violation of the United States Constitution. Consequently, we affirm the grant of habeas corpus relief.

## I. FACTS AND PRIOR PROCEEDINGS

Petitioner, Joseph Wilson, Jr., was convicted in a Georgia state court on August 16, 1979, of murder, kidnapping with bodily injury, and possession of a firearm during the commission of a crime. Wilson was sentenced for his crimes to death, life imprisonment, and five years imprisonment respectively, with his sentences to be served concurrently. The evidence presented at Wilson's trial tended to show that Wilson killed a man who he believed had cheated him in a drug deal by shooting the man at point blank range with a shotgun. Wilson's convictions and sentences were affirmed on direct appeal, *Wilson v. State*, 246 Ga. 62, 268 S.E.2d 895 (1980), *cert. denied*, 449 U.S. 1103, 101 S.Ct. 901, 66 L.Ed.2d 830 (1981).

Wilson filed a petition for habeas corpus in the Superior Court of Butts County, Georgia. That court denied relief with respect to the murder and kidnapping convictions, but granted relief with respect to the firearms charge on the ground that this latter crime was a lesser-included offense of the murder charge. The Supreme Court of Georgia affirmed the state habeas court's denial of relief with respect to the murder and kidnapping convictions. *Wilson v. Zant*, 249 Ga. 373, 290 S.E.2d 442, *cert. denied*, 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 940 (1982). The state did not cross-appeal from the grant of habeas re-

lief with respect to the firearms conviction.[1]

Wilson next filed the present habeas petition in federal district court, raising numerous constitutional challenges both with respect to the guilt/innocence phase and with respect to the sentencing phase of his trial. The district court rejected each of Wilson's challenges relating to the guilt/innocence phase of his trial, and Wilson has not appealed from this aspect of the district court's order. The district court granted sentencing relief on the basis of Wilson's prosecutorial argument challenge, but declined to reach Wilson's other arguments with respect to the sentencing phase of his trial. The state filed the present appeal from the decision granting sentencing phase relief. Thus, the only substantive issue briefed or argued on the merits in this appeal is the issue concerning prosecutorial argument in the sentencing phase of Wilson's trial.

## II. JURISDICTION TO HEAR APPEAL

█ Also pending before us is Wilson's motion to dismiss this appeal on the ground that the district court granted habeas relief without ruling on all of Wilson's claims for relief as to the sentencing phase. Wilson has cited this court's opinion in *Blake v. Zant*, 737 F.2d 925 (11th Cir.1984), for authority that a district court order disposing of less than all of a petitioner's claims for habeas relief is not an appealable final decision. Subsequent to oral argument in the present appeal, however, the opinion in *Blake v. Zant* was vacated by the court, and the jurisdictional question was reconsidered in *Blake v. Kemp*, 758 F.2d 523 (11th Cir.1985). The court in this latter opinion ruled that a judgment *granting* the writ of habeas corpus on less than all grounds asserted is an appealable final decision within the meaning of 28 U.S.C.A. § 1291. *Id.*, at 524–25. Wilson's petition comes within this rule of appealability since the district court granted habeas relief

---

1. Although the state did not cross-appeal from this ruling, the Supreme Court of Georgia stated its view that the firearms charge was not a

lesser-included offense of the murder charge. *See* 249 Ga. at 380, 290 S.E.2d at 448–49.

with respect to the sentencing phase of Wilson's trial. Consequently, we have jurisdiction to hear this appeal, and we proceed to consider the merits of the prosecutorial argument question.

## III. THE CONSTITUTIONALITY OF THE PROSECUTOR'S CLOSING ARGUMENT

██ We have recently considered at length the standards to be applied by a federal habeas court in reviewing a state prosecutor's closing argument. *See Brooks v. Kemp*, 762 F.2d 1383 (11th Cir. 1985) (en banc). A prosecutor's argument violates the Constitution if it renders the defendant's trial "so fundamentally unfair as to deny him due process." *Id.* at 1400 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645, 94 S.Ct. 1868, 1872, 40 L.Ed.2d 431 (1974)). Improper argument by a prosecutor reaches this threshold of fundamental unfairness if it is "so egregious as to create a reasonable probability that the outcome was changed." *Id.* at 1403. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Strickland v. Washington*, 466 U.S. 668, ——, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984).

The methodology we have adopted for applying these constitutional standards is to determine first whether particular arguments by a prosecutor were improper and if so, to determine what the probable effect of the improper argument was on the jury. *See Brooks v. Kemp*, 762 F.2d at 1403. This approach recognizes that "a permissible argument, no matter how 'prejudicial' or 'persuasive,' can never be unconstitutional." *Id.* at 1403. We turn therefore to review the two parts of the prosecutor's closing argument that Wilson contends deprived him of due process at the sentencing phase of his trial.

### A. *The Eberhart Quote*

In his closing argument, the prosecutor read a passage from a 19th Century Georgia case, *Eberhart v. State*, 47 Ga. 598, 609–10 (1873). The relevant portions of the closing argument, beginning with the prosecutor's introductory remarks, were as follows:

With reference to doing a higher duty and protecting society as opposed to the duty of rehabilitation, we would like to quote from a noted legal scholar in the 1800's. I think the Court is well aware of this particular passage:

(Reading): "We have, however, no sympathy with that sickly sentimentality that springs into action whenever a criminal is at length about to suffer for crime. This may be a sign of a tender heart, but it is also a sign of one not under proper regulation. Society demands that crime shall be punished and criminals warned, and the false humanity that starts and shudders when the axe of justice is ready to strike, is a dangerous element for the peace of society. We have had too much of this mercy. It is not true mercy. It only looks to the criminal, but we must insist upon mercy to society, upon justice to the poor victim whose blood cries out against his or her violators. That criminals go unpunished is a disgrace to our civilization, and we have reaped the fruits of it in the frequency in which bloody deeds occur. A stern, unbending, unflinching administration of the penal laws, as it is the highest mark of civilization, is also the surest mode to prevent the commission of offenses."

Trial Transcript at 1300–01. The Supreme Court of Georgia has condemned use of this passage by prosecutors, *see, e.g., Hawes v. State*, 240 Ga. 327, 335–36, 240 S.E.2d 833, 840 (1977); *Ruffin v. State*, 243 Ga. 95, 252 S.E.2d 472, 479–80 (1979), but the Georgia court has generally considered the effect of the passage insufficient to warrant reversal of the sentences imposed. *See Ruffin v. State*, 243 Ga. at 105, 252 S.E.2d at 479–80.

We have twice considered whether it was proper for prosecutors to use the *Eberhart* quote in closing argument. In *Potts v. Zant*, 734 F.2d 526, 535–36 (11th Cir.1984), we concluded that the passage may have misled the jury and that consequently its

use was improper. Likewise, in *Drake v. Kemp*, 762 F.2d 1449 (11th Cir.1985) (en banc), we concluded that use of the quote was "extremely improper." *Id.* at 1459. In each of these cases, the prosecutor attributed the remark to the Georgia Supreme Court, a fact that we emphasized in deciding that use of the quote was improper. In *Potts*, we said "the prosecutor was plainly attempting to suggest to the jury that prior decisions of the state supreme court mandated the imposition of the death penalty in this case, and this conduct was clearly improper." 734 F.2d at 536. In *Drake*, we said "the invocation of the Supreme Court of Georgia to abjure mercy is undeniably wrong." 762 F.2d at 1459. The prosecutor at Wilson's trial did not attribute the *Eberhart* quote to the Georgia Supreme Court, but introduced the passage as a quote "from a noted legal scholar in the 1800's." We must decide whether in light of this difference, the *Eberhart* language could properly be used in closing argument.

The clear import of the *Eberhart* language is that a sense of mercy should not dissuade one from punishing criminals to the maximum extent possible. This position on mercy is diametrically opposed to the Georgia death penalty statute, which directs that "the jury shall retire to determine whether any mitigating or aggravating circumstances ... exist and whether to recommend mercy for the defendant." O.C.G.A. § 17–10–2(c) (Michie 1982). Thus, as we held in *Drake*, the content of the *Eberhart* quote is "fundamentally opposed to current death penalty jurisprudence." 762 F.2d at 1460. Indeed, the validity of mercy as a sentencing consideration is an implicit underpinning of many United States Supreme Court decisions in capital cases. *See, e.g., Woodson v. North Carolina*, 428 U.S. 280, 303, 96 S.Ct. 2978, 2990, 49 L.Ed.2d 944 (1976) (striking down North Carolina's mandatory death penalty statute for the reason, *inter alia*, that it failed "to allow the particularized consideration of relevant aspects of the character and record of each convicted defendant before the imposition upon him of a sentence

of death"); *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978) (striking down Ohio's death penalty statute, which allowed consideration only of certain mitigating circumstances, on the grounds that the sentencer may not "be precluded from considering *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death") (emphasis in original). The Supreme Court, in requiring individual consideration by capital juries and in requiring full play for mitigating circumstances, has demonstrated that mercy has its proper place in capital sentencing. The *Eberhart* quote, in strongly suggesting otherwise, misrepresents this important legal principle.

We conclude that since the *Eberhart* quote is not a correct representation of the law that controls capital sentencing, its use by the prosecutor in the sentencing phase of Wilson's trial was improper. This conclusion is based on the content of the *Eberhart* language and does not depend on the source to which the passage was attributed. We will consider in part IV of this opinion whether in the context of the entire trial, the improper use of the *Eberhart* quote rendered the sentencing phase of Wilson's trial fundamentally unfair, with due regard for the significance of attributing the quote to a source other than the Georgia Supreme Court.

### B. *The Gregg v. Georgia Quote*

The prosecutor also read before the jury a passage from the United States Supreme Court's opinion in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). We reproduce here the prosecutor's remarks leading into the quote, and the first part of the quote:

We would like to call the Court's attention to what is generally considered among legal scholars, and anyone who had given much thought to the subject,

to the four generally accepted reasons for punishment.

The first is retribution. That is society's recognition that the crime is so horrible that it demands the extreme penalty. The case of Gregg versus Georgia recognized that particular valid policy consideration, and said that it was a valid policy consideration. I believe the wording of the case was as follows, and I am quoting from the case of Gregg versus Georgia, in which the United States Supreme Court upheld the death penalty:

(Reading): "In part, capital punishment is an expression of society's moral outrage at particularly offensive conduct. This function may be unappealing to many, but it is essential in an ordered society that asks its citizens to rely on legal processes rather than self-help to vindicate their wrongs." [2]

Trial Transcript at 1297–98.

As used by the prosecutor, the *Gregg* passage conveys the impression that "this function"—*i.e.*, capital punishment—is "essential in an ordered society." By contrast, the Supreme Court's intended meaning was quite different, as shown by a reading of the entire *Gregg* passage in context. The intended meaning was that recognition of the function of retribution is "essential in an ordered society.

In this habeas appeal, the state argues that taken in context, the prosecutor's closing argument made clear the true meaning of the *Gregg* quotation. The state would seem to contend that because it inserted the *Gregg* quotation into a general discussion of retribution, the jury would understand that the Supreme Court had reference to retribution and not to capital punishment when it said "this function ... is essential in an ordered society." We find this reconstruction of how the argument would be received by the jury to be entirely unconvincing. The prosecutor characterized *Gregg* as the case "in which the United States Supreme Court upheld the death penalty" immediately before reading the quoted passage. This would tend to reinforce the conclusion that the Supreme Court was referring to capital punishment when it said "it is essential in an ordered society."

Aside from this, however, one need only read the relevant portion of the prosecutor's closing argument to appreciate its message: the United States Supreme Court has stated that in its view, capital punishment is essential in an ordered society. The fact that many states and countries do not have capital punishment and yet enjoy ordered societies belies this conclusion, which in any event has never been expressed by the Supreme Court. As indicated above, a review of the entire context of the *Gregg* opinion shows that this was not the Supreme Court's intended meaning.[3] Therefore, we conclude that the prosecutor's misleading use of the passage was improper argument, and we proceed to consider whether this argument, and the use of the *Eberhart* passage discussed above, rendered the penalty phase of Wilson's trial fundamentally unfair.

---

**2.** The remainder of the prosecutor's quotation from *Gregg v. Georgia* was as follows:

"The instinct for retribution is part of the nature of man, and channeling that instinct in the administration of criminal justice serves an important purpose in promoting the stability of a society governed by law. When people begin to believe that organized society is unwilling or unable to impose upon criminal offenders the punishment they 'deserve,' then there are sown the seeds of anarchy—of self-help, vigilante justice, and lynch law.

"Retribution is no longer the dominant objective of the criminal law, but neither is it a forbidden objective nor one inconsistent with our respect for the dignity of men. Indeed,

the decision that capital punishment may be the appropriate sanction in extreme cases is an expression of the community's belief that certain crimes are themselves so grievous an affront to humanity that the only adequate response may be the penalty of death."
Trial Transcript at 1298–99.

**3.** We need not address the issue of whether or not it would have been proper for the prosecutor to argue the correct meaning of the Supreme Court language—*i.e.*, that recognition of the retribution function is essential in an ordered society. We note only the truism that everything said in a judicial opinion is not necessarily relevant to a jury's deliberations.

## IV. WHETHER THE IMPROPER ARGUMENTS RENDERED THE PENALTY PHASE FUNDAMENTALLY UNFAIR

We concluded in *Potts* and *Drake* that use of the *Eberhart* quote was highly prejudicial to the defendants in those cases. In *Potts*, we said that the passage may have misled the jury into believing it had a legal duty to return a death sentence, and that consequently the jury may have "failed to give its decision the independent and unprejudiced consideration the law requires." 734 F.2d at 536. In *Drake*, we said that the content of the *Eberhart* quote was "fundamentally opposed to current death penalty jurisprudence." 762 F.2d at 1460. In disparaging mercy, the passage "withdrew from the jury one of the most central sentencing considerations, the one most likely to tilt the decision in favor of life." *Id.* at 1460. We further observed in *Drake* that the prejudice caused by the *Eberhart* quote "exceeded even its factually misleading and legally incorrect character because of the attribution to the Georgia Supreme Court," *id.* at 1460, but as we noted, "absent the attribution, the claim would have been severely prejudicial." *Id.* at 1460.

We conclude in the present case that use of the *Eberhart* quote was indeed highly prejudicial to Wilson because the clear import of the language used is that a juror should not be motivated by mercy in deciding whether to impose the death penalty. In misstating the law on this critical sentencing consideration, the passage from *Eberhart* could likely have had a substantial effect on the jury's decision. By undermining mercy as a valid sentencing consideration, arguments such as those represented by the *Eberhart* quote strike at the most important component of a capital jury's discretion favoring capital defendants.

This effect cannot be entirely discounted just because the derogation of mercy is attributed to a "noted legal scholar" rather than to the Georgia Supreme Court. Either source would likely carry weight with laymen and influence their decision. In fact the attribution was to a passage by a noted legal scholar, which the prosecutor said was well known to the trial judge, thus adding additional status to the attribution. However, if the *Eberhart* language were simply presented by the prosecutor, unbolstered by any attribution, it would still cause us great concern because of its tendency to mislead the jury about the proper scope of its deliberations.

In this regard, the argument represented by *Eberhart* is significantly different from a prosecutor's legitimate plea in any particular case that the jury not extend mercy. The latter argument, which would properly arise from the facts in evidence and the character and history of the particular defendant, leaves the jury free to decide for itself whether to grant mercy. But when the prosecutor argues that it is mercy itself that is inappropriate, the jury is improperly told that the concept of mercy—the most significant factor which might point toward a choice of life imprisonment—is illegitimate.[4]

We turn next to evaluate the prejudicial effect of the prosecutor's use of a passage from *Gregg v. Georgia* out of context. We

---

4. We think that the instant argument is more prejudicial than that in *Bowen v. Kemp*, 769 F.2d 672 (11th Cir.1985). The argument in *Bowen* was "a more limited, if not rather garbled, version," *id.* at 683 n. 5, of the argument condemned by this court in *Drake*. Significantly, the primary thrust of the remarks in *Bowen* was that society and justice require a proper punishment and that mercy is two-sided and should consider not only the defendant, but also society: "Here, no mention was made of mercy, except that society occasionally should be the object of mercy, as well as a criminal defendant." *Id.* Of course, it is not improper to argue that justice requires a proper punishment and consideration of the appropriate needs of society as well as the criminal defendant. By contrast, the pernicious aspect of the *Eberhart* quotation, used verbatim by both the prosecutor in *Drake* and the prosecutor in this case, was communicating to the jury the idea that mercy for capital defendants was inappropriate. Like the *Bowen* panel, we conclude that the remarks in *Drake* and in this case are a "much more severe statement concerning the appropriateness of mercy for a capital crime defendant, and therefore much more prejudicial than the inarticulate argument" in *Bowen*. *Id.*

concluded in Section III.B. of this opinion that the passage as quoted tended to attribute to the Supreme Court the opinion that capital punishment is essential in an ordered society. We need hardly belabor the point that this incorrect report of Supreme Court precedent is highly prejudicial to a capital defendant. While the Supreme Court has decided that a state's decision to implement a capital punishment scheme does not violate the United States Constitution, *see Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the Court has not been called upon to endorse capital punishment. The prosecutor's selective quotation from *Gregg* told the jury not only that the Supreme Court endorses capital punishment, but also that the Supreme Court views capital punishment as essential in an ordered society. This placed the weight of opinion from the nation's highest judicial officers on the side of imposing the death penalty. The prejudicial effect was thus similar to that found in *Drake*, which "exceeded even [the *Eberhart* quote's] factually misleading and legally incorrect character because of the attribution to the Georgia Supreme Court." 762 F.2d at 1403.

We need not address the effect of either argument alone. However, the combined effect of the *Eberhart* quote and the *Gregg* quote is highly prejudicial. On the one hand, the jury was told that the basic rationale for a sentence of life imprisonment—*i.e.*, mercy—was an invalid consideration to inform their decision. On the other hand, the jury was told that its other choice—*i.e.*, the death penalty—had been endorsed by this nation's highest court as "essential in an ordered society." These two improper and highly prejudicial arguments by the prosecutor undermine our confidence in the result that was reached by the jury in the sentencing phase of Wilson's trial. The improper argument was "so egregious as to create a reasonable probability that the outcome was changed." *Brooks v. Kemp*, 762 F.2d at 1403.

The prosecutorial argument at issue here presents at least as strong a case for habe-

as relief as the argument condemned by the Supreme Court in the recent case of *Caldwell v. Mississippi*, —— U.S. ——, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). In *Caldwell*, the prosecutor told the jury in closing argument that the jury's sentencing decision was "not the final decision," and that its "job [was] reviewable." *Id.* at ——, 105 S.Ct. at 2637. The Court stated that the prosecutor's comments, left uncorrected, "might so affect the fundamental fairness of the sentencing proceeding as to violate the Eighth Amendment." *Id.* at ——, 105 S.Ct. at 2645.

Similarly in *Drake, supra*, we noted that the *Eberhart* passage, identical to the one quoted in the present case, "pre-dated the contemporary judicial effort to guide capital sentencing by principles drawn from the Eighth Amendment's protection against cruel and unusual punishment." 762 F.2d at 1459. We considered the *Eberhart* language to be "fundamentally opposed to current death penalty jurisprudence," and we concluded that the prosecutor's use of the passage struck at "the core of the jury's role in capital sentencing." *Id.* at 1460.

When core Eighth Amendment concerns are substantially impinged upon, as they were in *Drake* by the prosecutor's use of *Eberhart* to disparage mercy, and as they were in *Caldwell* by the prosecutor's suggestion to the jury that ultimate sentencing responsibility rested with appellate courts, it is understandable that confidence in the jury's decision will be undermined. *See Brooks v. Kemp*, 762 F.2d at 1402 n. 28 (the undermining confidence/reasonable probability test adopted in *Brooks* "is consistent with the need for high reliability in imposition of the penalty. *See Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). Justice Brennan's partial concurrence demonstrates that the application of the test in capital cases must be guided by that concern for reliability. —— U.S. at ——, 104 S.Ct. at 2073–75, 80 L.Ed.2d at 704–06.").

Our confidence in the sentencing decision in this case has been undermined by the prosecutorial argument in the sentencing

**628**

phase. We conclude that the sentencing phase was fundamentally unfair. For the foregoing reasons, the district court's order granting habeas corpus relief with respect to the sentence is

AFFIRMED.

TJOFLAT, Circuit Judge, specially concurring:

I would dismiss this appeal for want of a final judgment; the district court's dispositive order, granting a portion of the habeas relief petitioner requested, did not dispose of all of petitioner's claims. My view that we must dismiss an appeal from a partial final judgment (absent Fed.R.Civ.P. 54(b) certification) in a habeas corpus case, however, has been rejected by this court. *Blake v. Kemp*, 758 F.2d 523, 535–43 (11th Cir.) (Tjoflat, J., dissenting), *cert. denied,* —— U.S. ——, 106 S.Ct. 374, 88 L.Ed.2d 367 (1985). *But see Blake v. Kemp,* —— U.S. at ——, 106 S.Ct. at 374 (White, J., dissenting from denial of certiorari); *Stewart v. Bishop*, 403 F.2d 674, 679–80 (8th Cir.1968). *Blake* instructs that we entertain this appeal. Doing so, I concur in Judge Anderson's treatment of the merits of petitioner's claim that the prosecutor's closing argument rendered the sentencing phase of his jury trial fundamentally unfair.