No. 85–337. KEMP, WARDEN v. POTTS. C. A. 11th Cir. Motion of respondent for leave to proceed in forma pauperis granted. Certiorari denied.

CHIEF JUSTICE BURGER, with whom JUSTICE REHNQUIST joins, dissenting from the denial of certiorari.

Eleven years ago, while in Cobb County, Georgia, Potts and a female companion persuaded Robert Snyder to give them a ride in a pickup truck. After Snyder agreed, Potts shot him through the left ear and nose with a pistol. Snyder acted as if he were unconscious while Potts dragged him out of the truck. Potts robbed

Snyder and then, unable to start the truck, walked to a nearby home. There he told Michael Priest that an accident had occurred. Priest drove Potts back to the truck. Upon their arrival, Priest saw Snyder lying in a ditch and attempted to help him. But Potts ordered Priest to drive him and his companion to the next county, Forsyth County. Once there, he forced Priest out of the car at gunpoint. Priest said, "Oh my God, don't kill me"; Potts retorted that there was no such thing as God, and that he would determine whether Priest would live or die. Potts then put a gun to Priest's head and killed him.

Potts was convicted in the Superior Court of Cobb County of kidnaping Priest with bodily injury, armed robbery of Priest, and armed robbery and aggravated assault of Snyder. Potts was sentenced to death for the kidnaping and for the armed robbery. He was subsequently tried in the Superior Court of Forsyth County for the murder of Priest and received another death sentence. Potts' convictions and sentences were affirmed by the Georgia Supreme Court, although the court vacated Potts' death sentence for armed robbery. *Potts* v. *State,* 241 Ga. 67, 69, 243 S. E. 2d 510, 514 (1978). He then sought and was denied state habeas relief.

Potts next sought a writ of habeas corpus in the United States District Court for the Northern District of Georgia. The District Court ordered a new guilt/innocence trial with respect to the Cobb County kidnaping conviction and a new sentencing trial with respect to the Forsyth County murder conviction. 575 F. Supp. 374 (1983). The Court of Appeals for the Eleventh Circuit affirmed. 734 F. 2d 526 (1984).

Potts' federal habeas petition contained several issues that had never been presented to the Georgia state courts; for the first time in his petition, he argued that he was denied effective assistance of counsel. This issue had not been raised on direct appeal or on state habeas. Indeed, in the District Court Potts moved to amend his federal habeas petition to include this new claim. The State contended that Potts had not exhausted his state remedies, citing this Court's opinion in *Rose* v. *Lundy,* 455 U. S. 509 (1982). The District Court nonetheless granted the motion to amend, stating that it was "hard pressed to see how [the State] would be prejudiced by the granting of the . . . motion." Of course, this was a wholly insufficient basis for ignoring the requirement of exhaustion of state remedies made explicit in *Lundy.* There we ex-

plained that the exhaustion requirement is designed not only to avoid prejudice to state prosecutors but also "to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Id.,* at 518.

In his federal habeas petition, Potts also argued that the trial court erred in not instructing the jury that "bodily injury" was an element of the crime of capital kidnaping. From an examination of the record lodged with this Court, it seems clear that this issue was not presented to the Georgia Supreme Court either on direct appeal from the conviction or in the state habeas petition. Thus, Potts had not exhausted his state remedies when he sought federal habeas relief on this basis. Nonetheless, both the District Court and the Court of Appeals granted relief on this claim without giving the Georgia state courts any opportunity to review it.

Apart from the unnecessary "disruption of state-court proceedings" created by this failure to require Potts to exhaust state remedies, the record that resulted is unusual in several respects. For example, the Court of Appeals embarked on an extended discussion of the meaning of the Georgia capital kidnaping statute without the benefit and guidance of a prior Georgia court construction of the statute in light of Potts' objection. 734 F. 2d, at 529–530. Obviously our decision, and the decision of the court below, would have been aided by such a construction.

The Court of Appeals also acknowledged after parsing the Cobb County jury verdict that "there is . . . some degree of uncertainty as to what the Cobb County jury intended to find with regard to the kidnapping charge." *Id.,* at 530. The court nevertheless confidently declared that the jury had never found "bodily injury" because of defective instructions. The federal question presented on a challenge such as this is "'whether the ailing instruction *by itself* so infected the entire trial that the resulting conviction violates due process,' . . . not merely whether 'the instruction is undesirable, erroneous, or even "universally condemned."'" *Henderson* v. *Kibbe,* 431 U. S. 145, 154, and 157 (1977) (emphasis added) (quoting *Cupp* v. *Naughten,* 414 U. S. 141, 147 (1973)). Of course the Georgia state courts, familiar as they are with the nuances of trial procedure in that State, are in a far better position to decide such a question in the first instance than is the Court of Appeals.

By allowing Potts to raise these issues for the first time in his federal habeas petition, the Court of Appeals also effectively

circumvented sound state procedural rules that may have been applicable. Although the trial transcript is not part of the record lodged with this Court, it seems apparent that Potts never contested that the kidnaping here did in fact end with bodily injury. After all, Mr. Priest was found shortly after Potts had kidnaped him—not merely injured, but dead with a bullet through his head—and the whole record here is filled with evidence of mayhem. Accordingly, if the trial court's instructions were in any way defective on need for a jury finding of "bodily injury," it seems extremely unlikely that Potts objected. Indeed, he may have even invited the error or made a tactical decision not to object for the purpose of diverting the jury's attention from the obvious injury that resulted. In such circumstances, the state court might well and properly have concluded that Potts was procedurally barred from raising this claim, had he been required to proceed there first. Such a conclusion could have precluded federal-court review of this issue entirely since generally "if a defendant has an objection, there is an obligation to call the matter to the court's attention so the trial judge will have an opportunity to remedy the situation." *Estelle* v. *Williams*, 425 U. S. 501, 508, n. 3 (1976). This possibility was foreclosed by the Court of Appeals' hasty consideration of Potts' claim. The correct course, clearly mandated by our prior opinions, was to give the Georgia state courts "first crack" at Potts' constitutional objections.

"The exhaustion doctrine seeks to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez* v. *Hillery*, 474 U. S. 254, 257 (1986). Because the District Court and the Court of Appeals entertained a petition contrary to established law, I would vacate and remand with instructions to dismiss the petition to "'allo[w] the State an initial opportunity to pass upon and correct alleged violations of [Potts'] federal rights.'" *Lundy*, *supra*, at 518 (quoting *Duckworth* v. *Serrano*, 454 U. S. 1, 3 (1981)). We have followed essentially this procedure in other cases when we discovered that a petitioner has obtained relief on an unexhausted claim. See, *e. g.*, *Bergman* v. *Burton*, 456 U. S. 953 (1982) (after discovering exhaustion problem, vacating and remanding for reconsideration in light of *Lundy*). Accordingly, I dissent from the Court's denial of certiorari.