David Larry NELSON, Petitioner–Appellant, Cross–Appellee,

v.

John E. NAGLE, Warden, Respondent–Appellee, Cross–Appellant.

No. 91–7797.

United States Court of Appeals, Eleventh Circuit.

July 8, 1993.

Bryan A. Stevenson, Alabama Capital Representation Resource Center, Montgomery, AL, for petitioner-appellant.

Sandra J. Stewart, Kenneth S. Nunnelley, Asst. Attys. Gen., Alabama State Atty. General's Office, Montgomery, AL, for respondent-appellee.

Before KRAVITCH, HATCHETT and ANDERSON, Circuit Judges.

PER CURIAM:

In this capital case, we affirm the district court's decision granting appellant's petition for writ of habeas corpus requiring new penalty phase proceedings because the prosecutor's reading of a portion of the *Eberhart* case (*Eberhart v. State*, 47 Ga. 598 (1873)) rendered the penalty phase of appellant's trial fundamentally unfair.

FACTS

On August 28, 1974, David Larry Nelson, the appellant, pleaded guilty to murder in the second degree for the murder of Oliver King. The Circuit Court of Jefferson County, Alabama, sentenced Nelson to twelve years imprisonment.

In 1977, after serving six years of the twelve-year sentence, including pretrial time, Alabama prison officials released Nelson. On December 31, 1977, Nelson murdered James Dewey Cash during the course of a robbery. *Nelson v. State*, 452 So.2d 1367 (Ala.Crim.App.1984). A few hours later, on January 1, 1978, Nelson murdered Wilson W. Thompson. The facts of the Thompson murder are set forth in *Nelson v. State*, 511 So.2d 225 (Ala.Crim.App.1986).

PROCEDURAL HISTORY

A grand jury indicted Nelson on two counts of capital murder: (1) the intentional murder of James Dewey Cash during the commission of a robbery pursuant to the Code of Alabama 1975, § 13–11–2(a)(1) [1]; and (2) the murder of Wilson W. Thompson after having been convicted of the Oliver King murder in the second degree within the twenty years preceding the charged murder of Thompson, pursuant to the Code of Alabama 1975, § 13–11–2(a)(13) [2].

In March, 1979, a jury found Nelson guilty of capital murder for the death of Wilson W. Thompson, and the trial court sentenced Nelson to death. On August 4, 1981, the Court of Criminal Appeals of Alabama reversed and remanded the case pursuant to *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), and *Ritter v. State*, 403 So.2d 154 (Ala.1981). *Nelson v. State*, 405 So.2d 50 (Ala.Crim.App.1981). After retrial in March, 1982, a jury again convicted Nelson for the murder of Wilson W. Thompson. The jury found Nelson guilty of the capital offense of murder in the first degree, having been previously convicted of the Oliver King murder in the second degree within twenty years. After a separate sentencing hearing, a unanimous jury recommended a sentence of death. At a second sentencing hearing regarding aggravating and mitigating circumstances, the trial court found two aggra-

---

**1.** Although the circumstances relating to the Cash murder are not directly relevant to this appeal, we present them for purposes of clarity. In 1978, a jury convicted Nelson for the December 31, 1977 murder of James Dewey Cash. In 1980, the Court of Criminal Appeals of Alabama affirmed the conviction in *Nelson v. State*, 405 So.2d 392 (Ala.Crim.App.1980). On August 28, 1981, the Alabama Supreme Court granted *certiorari* and reversed and remanded the case to the Court of Criminal Appeals pursuant to *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); *Beck v. State*, 396 So.2d 645 (Ala.1980); *Ritter v. State*, 403 So.2d 154 (Ala. 1981); and *Reed v. State*, 407 So.2d 162 (Ala. 1981). *Nelson v. State*, 405 So.2d 401 (Ala.

1981). The Court of Criminal Appeals reversed and remanded the case to the trial court in *Nelson v. State*, 405 So.2d 401 (Ala.Crim.App. 1981). After retrial in 1982, the jury again found Nelson guilty of the Cash murder, and the trial court sentenced Nelson to life imprisonment. The Court of Criminal Appeals affirmed in *Nelson v. State*, 452 So.2d 1367 (Ala.Crim.App.), *cert. denied*, 452 So.2d 1367 (Ala.1984).

**2.** This statute considered a capital offense "[a]ny murder committed by a defendant who has been convicted of murder in the first or second degree in the 20 years preceding the crime." Code of Alabama 1975, § 13–11–2(a)(13) (repealed 1981).

vating circumstances and no mitigating circumstances.[3] Thus, on April 2, 1982, the trial court sentenced Nelson to death. Nelson's conviction and sentence were affirmed on direct appeal, *Nelson v. State*, 511 So.2d 225 (Ala.Crim.App.1986), *aff'd*, 511 So.2d 248 (Ala.1987), *and cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988).

Nelson then filed a petition for relief from conviction and sentence of death pursuant to Temporary Rule 20, Alabama Rules of Criminal Procedure.[4] A Jefferson County circuit judge denied the petition. The state of Alabama and Nelson entered into a stipulation in which Nelson agreed to forego a direct appeal of the rule 20 petition in favor of petitioning the federal courts for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The state agreed not to raise default issues regarding Nelson's failure to take a direct appeal.

Nelson filed a petition for habeas corpus relief in the United States District Court for the Northern District of Alabama. The district court ruled that the prosecutor's reading of a passage from *Eberhart v. State*, 47 Ga. 598 (1873), constituted an improper closing argument. The district court did not find that the closing argument in this case rendered the trial or sentencing proceedings fundamentally unfair; rather, it found that Eleventh Circuit law suggests that the *Eberhart* argument is "per se fundamentally unfair." Thus, it granted the writ of habeas corpus, unless the state afforded Nelson a new sentencing hearing.

### ISSUES

We must decide four issues: (1) whether the district court erred in denying relief on the motion *in limine;* (2) whether the district court erred in denying Nelson relief on his ineffective assistance of counsel claim; (3) whether the district court erred in denying Nelson relief on the *Brady* claim (*Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)); and (4) whether the district court erred in granting sentence stage relief based upon prosecutorial misconduct.

### DISCUSSION

#### A. Motion *In Limine*

Nelson contends that he relied on the trial court's pretrial ruling that the motion *in limine* would prohibit the jury from hearing evidence of the Cash murder. Nelson also contends that even if the trial court's subsequent reversal of the pretrial ruling was correct, this court may intervene if it finds that the ruling was fundamentally unfair. Finally, Nelson contends that this issue is not procedurally barred because he brought it on direct appeal and in the rule 20 motion. The state responds that the first time Nelson claimed that the trial court's reversal of its decision on the motion *in limine* violated his constitutional rights was in his rule 20 proceeding. Therefore, the claim is procedurally barred. The state also argues that Nelson could not rely on a pretrial ruling.

In declining to grant relief on the motion *in limine* issue, the district court found that it is "likely" that the claim is procedurally barred because no evidence indicated that Nelson raised the issue at trial or on appeal. Nevertheless, the district court addressed the merits of the claim and found that the state trial court's reversal of its decision on the motion *in limine* during trial did not violate Nelson's constitutional rights. The district court further ruled that the record failed to indicate that Nelson relied on the state trial court's ruling in electing to testify. We agree with the district court's initial ruling that Nelson's claim is procedurally barred.

■ It is well settled under Alabama law that failure to raise an issue either at trial or on direct appeal from a conviction constitutes a procedural bar to the assertion of the claim

---

3. The aggravating circumstances that the trial court found were: (1) Nelson was previously convicted of another capital felony or felony involving the use or threat of violence to the person; (2) the capital offense was committed while Nelson was engaged and was an accomplice in a commission or an attempt to commit the crime of robbery. *See* Ala.Crim.Code § 13A–5–49 (1982).

4. Renumbered Rule 32, Alabama Rules of Criminal Procedure effective January 1, 1991.

in a subsequent collateral proceeding. *Pelmer v. White*, 877 F.2d 1518, 1521 (11th Cir.1989) (citing *Ladd v. Jones*, 864 F.2d 108, 109 (11th Cir.), *cert. denied sub nom. Ladd v. Burton*, 493 U.S. 842, 110 S.Ct. 129, 107 L.Ed.2d 89 (1989)).

In this case, on direct appeal, Nelson raised the following issue:

I. The defendant was denied substantive and procedural due process by the introduction into evidence of an unrelated homicide.

The state court addressed the relevancy of the evidence concerning the murder of James Dewey Cash, which occurred approximately four hours prior to the murder of Thompson. The district court concluded that the state trial court properly admitted the evidence of the Cash killing because it bore upon Nelson's intent at the time of the Thompson shooting. The Cash evidence was also relevant to show the motive for the subsequent murder of Thompson. Nelson now raises a different claim: he relied on the trial court's pretrial motion *in limine* ruling prohibiting the state from introducing evidence of the Cash murder in deciding to testify. Nelson points to the fact that his claim on direct appeal included the words "denied substantive and procedural due process" to argue that this wording was sufficient to "alert the state court to the constitutional issue, which in this circuit is all that is necessary for there to be exhaustion."

This circuit has held that "preciseness of words is not necessary in presenting the issue so long as the state court has an adequate opportunity to consider a party's objection." *Osborne v. Wainwright*, 720 F.2d 1237, 1239 (11th Cir.1983) (citing *Hutchins v. Wainwright*, 715 F.2d 512, 519 (11th Cir. 1983)). Additionally, "when a criminal defendant perceives a constitutional error during the course of the trial, it is defense counsel's responsibility to raise the error both at trial and on appeal in clear and forthright terms thereby alerting the state of the perceived error." *Hutchins*, 715 F.2d at 519. Thus, Nelson preserved and presented on direct appeal the issue regarding relevancy of the Cash murder. He did not, however, preserve and present on direct appeal the issue of whether the trial court's reversal of the motion *in limine* ruling violated his constitutional rights. The state courts have not been afforded an adequate opportunity to address Nelson's claim that he relied on the motion *in limine* in electing to testify. As a federal habeas corpus petitioner, Nelson is "required to provide the state courts with a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Walker v. Dugger*, 860 F.2d 1010, 1011 (11th Cir.1988) (citing *Picard v. Connor*, 404 U.S. 270, 276–77, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971)), *cert. denied*, 489 U.S. 1029, 109 S.Ct. 1162, 103 L.Ed.2d 220 (1989). Hence, we hold that Nelson's *in limine* ruling claim is procedurally barred.

We may still review the merits of Nelson's claim, however, if he meets either of the two exceptions to the procedural default doctrine. The first is the "cause and prejudice" exception; the second is the "actually innocent" exception, also known as the "fundamental miscarriage of justice" exception used in extraordinary circumstances. *Johnson v. Singletary*, 938 F.2d 1166, 1174–75 (11th Cir. 1991) (en banc), *cert. denied*, —— U.S. ——, 113 S.Ct. 361, 121 L.Ed.2d 274 (1992); *see also Kennedy v. Singletary*, 967 F.2d 1482, 1483 (11th Cir.1992). Nelson has not shown that either exception of the procedural default doctrine applies in this case.[5]

### B. Ineffective Assistance of Counsel

Nelson contends that William M. Dawson, the lawyer who represented Nelson at trial and on appeal, rendered ineffective assistance of counsel because he failed to "marshal and present the wealth of intoxication evidence." On the other hand, the state contends that Dawson strategically declined

---

5. Nelson suggests that this court "can reach the merits by exercise of its inherent equitable powers to review this claim." That bare assertion, however, is inadequate to demonstrate either exception to the procedural default rule. We also note that Nelson makes sporadic and conclusory assertions that application of a procedural bar is "fundamentally unfair." Such conclusory assertions are insufficient to demonstrate the applicability of the narrow exception defined in *Johnson*, 938 F.2d at 1183.

to present an intoxication defense because it was inconsistent with Nelson's factual innocence defense. In reply, Nelson concedes that the intoxication defense and the factual innocence defense were inconsistent, but argues that these "alternative defenses" were reasonable in light of the overwhelming intoxication evidence.

Initially, we note that the district court's order repeatedly indicates that Nelson "deliberately bypassed the opportunity to present testimony from his trial counsel in either this court or the state court." [6] Additionally, the district court found that Dawson represented Nelson in four trials for capital murder and appears to have represented him in the appeal of at least three of those cases. The district court further found that Dawson, an experienced and skilled lawyer, submitted cogent and substantial pretrial motions and argued a vigorous defense.

Whether Nelson had ineffective assistance of counsel is reviewed *de novo*. *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984). Ineffective assistance of counsel claims are reviewed under the standard enunciated in *Strickland*. Accordingly, Nelson must show that Dawson performed deficiently, and that prejudice resulted from this deficient performance. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Generally, a strong presumption exists that counsel rendered adequate assistance. *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir.1988), *cert. denied*, 489 U.S. 1071, 109 S.Ct. 1355, 103 L.Ed.2d 822 (1989); *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. As the Supreme Court recognized, the judiciary must give deference when reviewing a lawyer's performance because it is easy to determine, after reviewing the case, that the lawyer acted unreasonably. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. The role of a federal court in collaterally reviewing state judicial proceedings is not to point out counsel's errors, but to determine whether counsel's performance was below prevailing professional norms to such an extent that the defendant was denied Sixth Amendment

right to the assistance of counsel. *Bertolotti v. Dugger*, 883 F.2d 1503, 1510 (11th Cir. 1989), *cert. denied*, 497 U.S. 1032, 110 S.Ct. 3296, 111 L.Ed.2d 804 (1990). In this case, the district court found that Nelson failed to show that Dawson rendered ineffective assistance. We agree.

Under Alabama law, "intoxication, voluntarily produced, is never a defense against a criminal charge unless it is so extreme as to render impossible some mental condition which is an essential element of the criminal act." *Jones v. State*, 362 So.2d 1303, 1315 (Ala.Crim.App.1978). Partial intoxication is insufficient to disprove the requisite intent. *Green v. State*, 342 So.2d 419, 421 (Ala.Crim.App.1977); *see also Jones*, 362 So.2d at 1315 (finding that the requisite degree of intoxication must be so extreme as to "paralyze the mental faculties and render the appellant incapable of forming or entertaining the design to take a life"). Nelson submits detailed facts relating to his alleged intoxication on the night of the Thompson murder. Based on a review of the record, however, we conclude that Nelson failed to show the requisite level of intoxication. In fact, Nelson testified that he was not intoxicated. The record indicates that Nelson's counsel (Dawson) asked him the following question: "Were you intoxicated at the time [when Thompson was shot]?" Nelson replied: "I wasn't exactly what you would say intoxicated at that time." Though Nelson may have been partially intoxicated, his own testimony conflicts with a defense of intoxication.

Moreover, the state argues, and Nelson concedes, that his factual innocence defense and the intoxication defense were inconsistent. We find that Dawson's decision not to present an intoxication defense was reasonable in light of the factual innocence defense. *See, e.g., Jones v. Kemp*, 678 F.2d 929, 931 (11th Cir.1982) (finding that defense counsel's failure to develop an inconsistent defense was not ineffective assistance of counsel), *cert. denied*, 459 U.S. 1113, 103 S.Ct. 745, 74 L.Ed.2d 965 (1983). Because, Nelson

---

**6.** The transcript of the evidentiary hearing indicates that both parties requested an evidentiary hearing only on the *in limine* ruling.

fails to demonstrate that Dawson rendered deficient performance, we need not address the prejudice prong of the ineffective assistance of counsel test.

## C. The *Brady* Claim

Nelson contends that the state withheld from him four items which may have changed the outcome of his trial. He argues that an audio tape of a police interview with his mother's neighbors, the Sims, describing Nelson's physical state a few hours after the murder indicates that he was intoxicated. Additionally, Nelson argues that evidence of his fingerprint lifted from a whiskey bottle found at the murder scene provides a vital link in proving and corroborating a defense of intoxication. Finally, Nelson suggests that two photographs corroborate his testimony of being asleep when someone shot Thompson. In rebuttal, the state argues that not only were these four items available to Nelson, but also, they are not favorable to his case nor material under the *Brady* test. The district court denied Nelson relief as to his *Brady* claim because it found that he unequivocally failed to meet the second and third prongs of the *Brady* analysis.

■ We agree with the district court that Nelson fails the *Brady* analysis. To establish a *Brady* claim, Nelson must prove all three of the following elements: (1) that the prosecution suppressed evidence (2) that the evidence was favorable to the petitioner or exculpatory and (3) that the evidence was material to the issues at trial. *Aldridge v. Dugger*, 925 F.2d 1320, 1325 (11th Cir.1991); *Delap v. Dugger*, 890 F.2d 285, 298 (11th Cir.1989), *cert. denied*, 496 U.S. 929, 110 S.Ct. 2628, 110 L.Ed.2d 648 (1990); *United States v. Burroughs*, 830 F.2d 1574, 1577–78 (11th Cir.1987), *cert. denied sub nom. Roger v. United States*, 485 U.S. 969, 108 S.Ct. 1243, 99 L.Ed.2d 442 (1988). We will not address the first two prongs of the test because we find that the evidence was not material, the third prong. Evidence is material when "a reasonable probability exists that the outcome of the proceedings would have been different" had the evidence been disclosed to the defense. *Burroughs*, 830 F.2d at 1578.

■ Nelson fails to show that the evidence was material to the issues at trial. First, the audio tape of the Sims' testimony and the fingerprint evidence would support an intoxication defense, but Nelson's counsel reasonably declined to present an intoxication defense in light of Nelson's factual innocence defense. Second, Nelson provided the jury with evidence on his factual innocence defense, making the two photographs at best cumulative evidence. Because Nelson cannot show that this evidence would have changed the outcome of his trial, we hold that his *Brady* claim lacks merit.

## D. Prosecutorial Misconduct at Penalty Phase

■ We review the prosecutor's closing argument to determine whether it rendered the sentencing phase of Nelson's trial "so fundamentally unfair as to deny him due process," thereby violating the Constitution. *Wilson v. Kemp*, 777 F.2d 621, 623 (11th Cir.1985) (citing *Brooks v. Kemp*, 762 F.2d 1383 (11th Cir.1985) (en banc)). A prosecutor's argument is fundamentally unfair if it is "so egregious as to create a reasonable probability that the outcome was changed." *Wilson*, 777 F.2d at 623 (quoting *Brooks*, 762 F.2d at 1403). This review process has two prongs: first, we must determine whether the prosecutor's closing argument was improper, and second, what was the probable effect of the improper argument on the jury. *Wilson*, 777 F.2d at 623 (referring to *Brooks*, 762 F.2d at 1403).

### 1. The *Eberhart* Quote

Nelson contends that the prosecutor's reading of a passage from a nineteenth century Georgia Supreme Court decision, *Eberhart v. State*, 47 Ga. 598 (1873), was improper and violated his Fifth and Fourteenth Amendment rights. The state responds that the *Eberhart* quotation was not improper and did not render Nelson's sentencing fundamentally unfair, in light of the trial court's jury instructions, the overwhelming evidence, and Alabama law on sentencing. The district court granted the writ of habeas corpus "based purely on a perception that the Elev-

enth Circuit law is that the argument is, for all practical purposes, per se fundamentally unfair."

██ The relevant portions of the prosecutor's closing argument were as follows:

Ladies and gentlemen, I came across a case where a judge wrote, in regard to the death penalty, that—

. . . .

The judge said, here, at the end of his opinion where the death penalty was affirmed:

'We have, however, no sympathy with that sickly sentimentality that springs into action whenever a criminal is at length about to suffer for crime. It may be a sign of a tender heart, but it is also a sign of one not under proper regulation. Society demands that crimes shall be punished and criminals warned, and the false humanity that starts shudders when the axe of justice is ready to strike, is a dangerous element for the peace of society. We have had too much of this mercy. It is not true mercy. It only looks to the criminal. But we must insist upon mercy to society, upon justice to the poor woman whose blood cries out against her murderers. To let criminals go unpunished is a disgrace for our civilization and we have reaped the fruits of it in the frequency in which blood deeds occur. A stern, unbending, unflinching administration of the penal laws, without regard to position, race or sex, as it is the highest mark of civilization, is also the surest mode to prevent the commission of offenses.'

This circuit has considered the use of substantially similar language from *Eberhart* when reviewing Georgia cases. *See Presnell v. Zant*, 959 F.2d 1524 (11th Cir.1992); *Drake v. Kemp*, 762 F.2d 1449 (11th Cir. 1985) (en banc), *cert. denied*, 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 738 (1986); *Wilson v. Kemp*, 777 F.2d 621 (11th Cir.1985), *cert. denied*, 476 U.S. 1153, 106 S.Ct. 2258, 90 L.Ed.2d 703 (1986); *Potts v. Zant*, 734 F.2d 526 (11th Cir.1984), *cert. denied sub nom. Potts v. Kemp*, 475 U.S. 1068, 106 S.Ct. 1386, 89 L.Ed.2d 610 (1986); *Buttrum v. Black*, 908 F.2d 695 (11th Cir.1990), *aff'g* 721 F.Supp. 1268 (N.D.Ga.1989); *Bowen v. Kemp*, 769 F.2d 672 (11th Cir.1985), *rev'd in part on other grounds*, 832 F.2d 546 (11th Cir.1987) (en banc), *and cert. denied*, 485 U.S. 970, 108 S.Ct. 1247, 99 L.Ed.2d 445 (1988). These cases hold that the prosecutor's closing argument, quoting from *Eberhart*, constituted error.

We find unpersuasive the state's contention that the prosecutor's closing argument was proper because Alabama, unlike Georgia, has no mercy option. Both states have a mercy option. Under Georgia law, the mercy option is expressly stated: "Upon the conclusion of the evidence and arguments, the judge shall give the jury appropriate instructions, and the jury shall retire to determine whether any mitigating or aggravating circumstances ... exist and whether to recommend mercy for the defendant." O.C.G.A. § 17–10–2(c) (Michie 1990). Under Alabama law, however, the mercy option is implicitly stated:

mitigating circumstances shall include any aspect of a defendant's character or record in any of the circumstances of the offense that the defendant offers as a basis for a sentence of life imprisonment without parole instead of death, and any other relevant mitigating circumstance which the defendant offers as a basis for a sentence of life imprisonment without parole instead of death.

Ala.Crim.Code § 13A–5–52 (1982). Indeed, this court has found that mercy is an implicit sentencing consideration in many United States Supreme Court decisions in capital cases. *Wilson*, 777 F.2d at 624 (citing *Woodson v. North Carolina*, 428 U.S. 280, 303, 96 S.Ct. 2978, 2990–91, 49 L.Ed.2d 944 (1976) for the proposition that the Supreme Court struck down North Carolina's mandatory death penalty statute because, among other things, it failed "to allow the particularized consideration of relevant aspects of the character and record of each convicted defendant before the imposition upon him of a sentence of death"; and *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978) for the proposition that the Supreme Court struck down Ohio's death penalty stat-

ute because it found that the sentencer may not "be precluded from considering *as a mitigating factor,* any aspect of a defendant's character or record in any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death" (emphasis in original)). Thus, the *Wilson* court concluded that the *Eberhart* quote misstated the law because the Supreme Court has shown that mercy has its proper place in capital sentencing requiring "individual consideration by capital juries" and "full play for mitigating circumstances." *Wilson,* 777 F.2d at 624.

We note that Alabama courts have recently recognized mercy as a proper consideration in sentencing. *See Duren v. State,* 590 So.2d 360, 367 (Ala.Crim.App.1990) (finding that counsel's "plea for mercy" defense at the sentencing phase was reasonable), *aff'd* 590 So.2d 369 (Ala.1991); *Hooks v. State,* 534 So.2d 329, 347 (Ala.Crim.App.1987) (acknowledging that defense counsel pleaded for mercy on behalf of the defendant and that the jury recommended a life sentence without parole), *aff'd,* 534 So.2d 371 (Ala.1988); *Bracewell v. State,* 506 So.2d 354, 358 (Ala. Crim.App.1986) (finding it "error to deny the defense counsel the opportunity to seek to determine whether a prospective juror would under no circumstances recommend mercy in the event the defendant is found guilty of the capital crime charged"). Thus, we conclude that mercy is a proper consideration in the sentencing phase of an Alabama case. Accordingly, we hold that the prosecutor erroneously cautioned the jury not to consider mercy. Mercy has its proper place in capital sentencing under Alabama law. We must, however, determine whether the prosecutor's improper closing argument rendered Nelson's trial fundamentally unfair.

### 2. Fundamental Unfairness

Thus far, this circuit has found sufficient prejudice to warrant issuance of the writ of habeas corpus in five out of six cases where the prosecutor quoted from *Eberhart.* In

*Potts,* this court found that the use of the *Eberhart* argument, without more, read in the presence of the jury, mandated a retrial on the penalty issue. *Potts,* 734 F.2d at 536. In *Drake,* this court found that the prosecutor's closing argument, quoting from *Eberhart* and *Hawkins v. State,* 25 Ga. 207 (1858) and attributing the *Eberhart* quote to "the Justice of the Supreme Court of Georgia," mandated a reversal of the district court's denial of the writ. *Drake,* 762 F.2d at 1458– 60. In *Buttrum,* this court affirmed the rationale of the district court. *Buttrum,* 908 F.2d at 695. *See Buttrum,* 721 F.Supp. 1268, 1318 (N.D.Ga.1989) (finding that even though the prosecutor did not attribute the *Eberhart* passage to a particular source, it concluded that the prosecutor's comments were improper and prejudicial because of their content and because the prosecutor began the *Eberhart* quotation immediately after and in the same sentence as his recitation of the jurors' oath). In *Wilson,* this court found that the prosecutor's use of the *Eberhart* quote, attributing the passage to "a noted legal scholar in the 1800's," constituted reversible error. *Wilson,* 777 F.2d at 623, 627.

Recently, in *Presnell,* this court held that the prosecutor's recitation of *Eberhart,* attributing it to the Supreme Court of Georgia, rendered the sentencing phase of the defendant's capital murder trial fundamentally unfair where the prosecutor relied heavily on the quote and where mercy played a central role in the sentencing phase of the defendant's trial. *Presnell,* 959 F.2d at 1531. *Bowen* is the only case in which this court did not find undue prejudice in the prosecutor's use of *Eberhart. Bowen,* however, is distinguishable from this case. In *Bowen,* this court found that "no mention was made of mercy, except that society occasionally should be the object of mercy, as well as a criminal defendant." *Bowen,* 769 F.2d at 683 n. 5.

Unlike *Bowen,* we find that undue prejudice occurred in this case because mercy played a central role.[7] The prosecutor

---

7. The *Presnell* court found unpersuasive the state's argument that *Presnell* is distinguishable from *Wilson, Drake,* and *Potts* on the ground that the jury in *Presnell* was charged on the appropri-

ateness of considering mercy; rather, the court found that *Wilson, Drake,* and *Potts* were not decided on the presence or absence of mercy,

directly addressed the jury and quoted extensively from *Eberhart*, which overwhelmingly discourages a jury from considering mercy. Moreover, after the prosecutor finished the quote, defense counsel objected and the trial court stated, "It is literature, just like the Bible. Overruled." The defense counsel responded, "We submit that that is not like the Bible." In an effort to withdraw its statement, the trial court stated, "I didn't mean that. But literature can be argued." In this case, the trial court's comments prejudiced the jury because the comments gave the jury the impression that the trial court approved of the passage. Thus, the trial judge's comments urged the jury to impose the death penalty. Additionally, the prosecutor attributed the *Eberhart* quotation to a judge and failed to include the date of the *Eberhart* case, thus giving the case the appearance of current death penalty law.

In this case, the defense begged for mercy. Nelson himself made a plea for mercy, stating: "All I can say is I told the truth on the witness stand and other than what mitigating circumstances that has already been offered, the only other one I can offer is the fact that I'm not guilty." Nelson's counsel then addressed the jury, also pleading for mercy. He proffered mitigating circumstances and pleaded for the jury to "pray over this very hard."

We hold that the prosecutor's improper use of the *Eberhart* quote, suggesting that judicial authority discourages consideration of mercy in capital cases, rendered the sentencing phase of Nelson's trial fundamentally unfair.

## CONCLUSION

For the foregoing reasons, we hold that Nelson was procedurally barred from asserting the *in limine* issue, failed to show that his trial counsel was ineffective, and failed to satisfy the *Brady* analysis. We also hold that the prosecutor's improper use of the *Eberhart* quote rendered the sentencing phase of Nelson's trial fundamentally unfair. Accordingly, we affirm the district court's

and that the courts had given mercy instructions

conditional issuance of the writ of habeas corpus.

AFFIRMED.

in each case. *Presnell,* 959 F.2d at 1530 n. 4.