David Larry NELSON, Plaintiff,

v.

Donal CAMPBELL and Grantt
Culliver, Defendants.

No. CIV.A. 03T1008N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 7, 2003.

Joe Wilson Morgan, III, Birmingham,
Michael Kennedy McIntyre, H. Victoria
Smith, Atlanta, GA, for David Larry Nel-
son, plaintiff.

J. Clayton Crenshaw, Michael B. Bill-
ingsley, Office of the Attorney General,
Montgomery, for Donal Campbell, in his
individual and official capacity as Commis-
sioner of the Alabama Department of Cor-
rections, Grantt Culliver, defendants.

*OPINION*

MYRON H. THOMPSON, District
Judge.

Plaintiff David Larry Nelson, an inmate
at Holman Correctional Facility in Atmore,
Alabama, is scheduled to be executed by
lethal injection at 6:00 p.m. on October 9,
2003, for the murder of Wilson Thompson.
On October 6, 2003, Nelson filed a com-
plaint under 42 U.S.C.A. § 1983 against

defendant Donal Campbell, the Commissioner of the Alabama Department of Corrections, and defendant Grantt Culliver, the Warden of Holman, alleging that a medical procedure that will be carried out prior to his execution will constitute cruel and unusual punishment, as proscribed by the Eighth Amendment to the United States Constitution. Specifically, Nelson alleges that he has compromised veins because of his years of intravenous drug use and that the procedure the defendants have proposed for accessing a vein to administer the lethal injection is "invasive and barbaric" and may subject him to a "substantial risk of ... substantial and prolonged pain."[1] Nelson seeks an order staying his execution, an order directing the defendants to provide him with "the protocol concerning the medical procedure which will be followed to gain venous access as a predicate to [his] execution," an order requiring the defendants to "consult with medical experts and promulgate a protocol concerning venous access that comports with contemporary standards of medical care and the Eighth Amendment," and an order compelling the defendants to comply with state law on death row prisoners' right of access to their physicians.[2] The defendants have filed a motion to dismiss for lack of jurisdiction.

## I. BACKGROUND

In order to understand the relief Nelson is requesting, it is necessary to summarize briefly the procedure the State has proposed using.

Nelson's veins have been severely compromised due to years of intravenous drug use. He alleges that, over the last two decades, prison medical personnel have encountered difficulty gaining venous access during routine physical examinations.[3] Therefore, some alternative method besides a simple catheter in his arm will be necessary to gain access to his veins. Nelson brings this suit challenging the protocol the State has proposed using in order to gain intravenous access to his veins to administer the lethal injection.

Warden Culliver has presented an affidavit, confirmed by the doctor who will conduct the procedure, which states that, to administer the lethal injection, the doctor will attempt to attach a direct intravenous line to the femoral vein in Nelson's thigh, or, if that does not work, to the "external carotid vein" in Nelson's neck. In the event these are both unsuccessful, the defendants propose making a "2 inch incision in Nelson's upper arm for the purpose of locating a peripheral vein to perform a central line procedure"[4]; this procedure, which is referred to as a "cutdown procedure," would be done using a local anesthetic.

Nelson has submitted expert testimony from Dr. Mark Heath stating, first, that the "external carotid vein" referred to by both Warden Culliver and Dr. Marc Sonnier, the defendants' expert, does not exist in human beings.[5] Dr. Heath further states that because of Nelson's history of intravenous drug use and the lack of visi-

---

1. Complaint for injunctive and declaratory relief, filed October 6, 2003 (Doc. No. 1), pp. 9, 12.

2. Id. at 19.

3. Complaint for injunctive and declaratory relief, filed Oct. 6, 2003 (Doc. No. 1), p. 3.

4. Affidavit of Warden Grantt Culliver, Attachment to Motion to dismiss, filed Oct. 7.2003 (Doc. No. 4), p. 3.

5. Second affidavit of Mark Heath, M.D., Attachment to Reply to defendants' motion to dismiss, filed October 7, 2003 (Doc. No. 11), ¶ 5, 6, 7. Dr. Heath speculates that Warden Culliver may have intended to refer to the "external jugular vein."

ble peripheral veins in his lower arms and hands, medical personnel will probably have to place a central line in the femoral vein, which he states is in the groin, not the thigh; the subclavian vein behind the collar bone; or the jugular vein in the neck.[6]

Dr. Heath states that a cut-down procedure, which defendants intend to perform under local anesthetic, is "usually performed under deep sedation ... because it would otherwise be an extraordinarily disturbing and distressing experience." [7] The procedure "involves making a series of surgical incisions through the skin, ... underlying connective tissue, ... layers of fat, [and] ... layers of muscle, until the region surrounding a large vein is reached." [8] Such a procedure entails numerous risks (such as severe hemorrhage, extreme pain, cardiac arrest and asphyxia), and therefore should only be performed by a specialist.[9] Dr. Heath states that an attempt to perform a cut-down procedure on Nelson's arm will likely be "ineffective" because Nelson's veins will likely be "scarred and/or thrombosed (occluded by clot)" due to his history of intravenous drug use.[10]

According to Nelson, using a cut-down procedure is contrary to modern medical practice, and there is a less invasive, less painful, and safer alternative, referred to as "percutanous central line placement." [11] The defendants have offered no explanation as to why they intend to use a cut-down procedure instead of a percutaneous central line placement. Nelson requests that his execution be stayed long enough for this court to consider the merits of his claim that the use of a cut-down procedure constitutes cruel and unusual punishment under the Eighth Amendment.

## II. STATE CLAIM

Nelson seeks an order requiring the defendants to abide by 1975 Ala.Code § 15–18–81, which provides that a condemned person's physician "shall be admitted to see him when necessary to his health." The defendants have moved to dismiss this claim on the grounds that this court does not have jurisdiction to order state officials to comply with state law. The court agrees that it is barred by *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984), from granting relief on Nelson's state-law claim. Accordingly, Nelson's state-law claim will be dismissed.

## III. FEDERAL CLAIM

Nelson claims that the procedure by which the defendants plan to access his veins to administer the lethal injection—the so-called "cut down" procedure—will constitute cruel and unusual punishment under the Eighth Amendment. Nelson seeks an order staying his execution, requiring the defendants to divulge the exact protocol they intend to follow, and directing the defendants to develop a protocol that comports with contemporary medical standards. The defendants have moved to dismiss Nelson's federal claim on the ground that, while brought under 42 U.S.C.A. § 1983, it is the equivalent of a habeas corpus claim and, as a result, this

---

**6.** *Id.* at ¶ 3.

**7.** First affidavit of Mark Heath, M.D., Attachment 6 to Complaint for injunctive and declaratory relief, filed Oct. 6, 2003 (Doc. No. 1), ¶¶ 14, 13.

**8.** *Id.* at ¶ 9.

**9.** *Id.* at ¶ 18.

**10.** Second Affidavit of Mark Heath, M.D., at ¶ 13.

**11.** First affidavit of Mark Heath, M.D., at ¶ 23.

court is barred from hearing the claim by 28 U.S.C.A. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132 (AEDPA). The court agrees that, under binding Eleventh Circuit Court of Appeals case law, this claim is due to be dismissed for lack of jurisdiction.

The Eleventh Circuit has held that when a prisoner brings an action under § 1983 that is the "functional equivalent" of a habeas corpus petition, the § 1983 action is to be treated as a habeas corpus petition and subjected to the limits imposed on successive petitions in 28 U.S.C.A. § 2244. *Fugate v. Dep't of Corr.*, 301 F.3d 1287, 1288 (11th Cir.2003); *Spivey v. State Bd. of Pardons and Paroles*, 279 F.3d 1301, 1303 (11th Cir.2002); *Hill v. Hopper*, 112 F.3d 1088, 1088–89 (11th Cir.1997); *Felker v. Turpin*, 101 F.3d 95, 96 (11th Cir.1996). The Eleventh Circuit has applied this rule on a number of occasions to § 1983 claims alleging that a particular manner of execution violates the Eighth Amendment. *See, e.g., Fugate*, 301 F.3d at 1288, *Hill*, 112 F.3d at 1088. The Eleventh Circuit has also strongly suggested that any § 1983 claim that seeks a stay of execution should be treated as a habeas claim. *See Spivey*, 279 F.3d at 1303 n. 3; *cf. Bradley v.*

*Pryor*, 305 F.3d 1287, 1292 (11th Cir.2002) (Edmondson, C.J., specially concurring) (noting that an important reason the § 1983 claim before the court did not need to be treated as a habeas petition was that the petitioner did not seek a stay of execution). Constrained as it is by the Eleventh Circuit's precedent, the court must conclude that Nelson's claim—which challenges procedures closely related to his execution and seeks a stay of execution—must be treated as a habeas petition.

As Nelson's counsel conceded in a telephone conference on October 7, 2003,[12] Nelson has already exhausted his habeas relief in this matter. *See Nelson v. Alabama*, 292 F.3d 1291 (11th Cir.2002), *cert. denied*, —— U.S. ——, 123 S.Ct. 1573, 155 L.Ed.2d 319 (2003); *Nelson v. Nagle*, 995 F.2d 1549 (11th Cir.1993). Under 28 U.S.C.A. § 2244(b), a prisoner is presumptively barred from bringing successive habeas petitions except in limited circumstances.[13] Further, 28 U.S.C.A. § 2244(b)(3)(A) requires that a prisoner wishing to bring a second habeas petition must obtain approval from the court of appeals to do so.[14] Because Nelson did not first apply to the court of appeals for approval to file a second habeas petition, this court does not have jurisdiction to

---

**12.** Transcript of In–Chambers Telephone Conference, October 7, 2003, p. 22.

**13.** 28 U.S.C.A. § 2244(b) reads in part:

"(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

**14.** 28 U.S.C.A. § 2244(b)(3)(A) reads:

"Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."

hear his claim. *Fugate,* 301 F.3d at 1288; *Spivey,* 279 F.3d at 1303. Accordingly, Nelson's Eighth Amendment claim must be dismissed.

## IV. CONCLUSION

The court recognizes that the import of the dismissal of this lawsuit is that Nelson will be effectively left without a federal forum for review of his Eighth Amendment claim.

Nelson is not asking the court to permanently stop his execution;[15] instead, he is asking that his lethal injection be delayed until he is assured that a safe, medically acceptable procedure will be used to gain access to his veins. Nelson claims the State of Alabama is planning to perform an allegedly barbaric and dangerous medical procedure on him even though there is a safer alternative available. In other words, Nelson is asking the State to comply with the Eighth Amendment to the Constitution by refraining from inflicting unnecessary and wanton pain upon him. *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976).

■ Nelson did not know about the State's plan to use a "cut-down" procedure until earlier this year, so he could not have raised the issue in the federal habeas action he filed in 1997. Nonetheless, he almost certainly cannot obtain relief now by filing another habeas petition because his claim does not depend on a new constitutional principle or on newly discovered facts that show actual innocence. *See* 28 U.S.C.A. § 2244(b)(2)(A) & (B). Nor, for the reasons given in Part III of this opinion, can Nelson obtain non-habeas relief.

■ The rule that a § 1983 action seeking a stay of execution must be treated as a habeas petition means that, after a death row inmate has filed his first federal habeas petition, he can never obtain a stay of execution from a federal court so that court can review a claim of an Eighth Amendment claim regarding any later decision as to how the execution is to be carried out. The rule means that no matter how meritorious Nelson's claim is, and despite the fact that he could not raise his claim in his earlier habeas petition, there seems to be no way for him to obtain federal relief now.

This rule also distinguishes between death row inmates whose execution dates are imminent and those whose are not. In *Bradley v. Pryor,* 305 F.3d 1287 (11th Cir.2002), the Eleventh Circuit allowed a death row inmate's § 1983 action, which did not include a request for a stay of execution, to proceed because a judgment in favor of the plaintiff would not "necessarily imply the invalidity of his conviction or sentence," *Heck v. Humphrey,* 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). There, the plaintiff sought access to evidence for the purposes of DNA testing, and the court noted that a judgment in his favor would merely give him access to the evidence, without implying anything about the validity of his sentence.

---

**15.** This fact—that Nelson is not seeking a *permanent* stay of his execution—makes this case arguably factually different from *Fugate v. Dept. of Corrections,* 301 F.3d 1287 (11th Cir.2002), *Hill v. Hopper,* 112 F.3d 1088 (11th Cir.1997), and *Felker v. Turpin,* 101 F.3d 95 (11th Cir.1996). In all of these cases, death row inmates brought § 1983 actions seeking stays of execution on the ground that the method of their execution violated the Eighth Amendment. Here, Nelson does not challenge the lethal injection itself, but a unique procedure that must be carried out on him alone in order to gain access to his compromised veins so that the lethal injection can occur. This factual difference, however, does not detract from the conclusion that Nelson is still seeking a stay, albeit a temporary one, of his execution, and it is this stay request that brings this case within the restrictions of habeas relief as applied by the Eleventh Circuit.

Likewise, here a judgment for Nelson would not imply anything about the validity of his conviction or sentence, but would simply compel the State to use a humane procedure to gain access to Nelson's veins for the purpose of administering a lethal injection. The only distinction between this § 1983 claim and the one in *Bradley* is that Nelson is scheduled to be executed in two days, with the procedure to be carried out before the execution, and thus a stay of execution is necessary for his case to be heard at all. However, Eleventh Circuit law is clear that such a stay can be obtained through only habeas relief—relief which is now foreclosed.

It would seem that there should be a process by which Nelson can seek enforcement of his Eighth Amendment rights. However, as the law now stands, that is, absent a change by either the Eleventh Circuit or the United States Supreme Court, no such relief seems to be available.

An appropriate judgment will be entered.

### JUDGMENT

In accordance with the memorandum opinion entered this date, the following is the ORDER, JUDGMENT, and DECREE of the court as follows:

(1) The motion to dismiss, filed by defendants Donal Campbell and Grantt Culliver, on October 7, 2003 (Doc. No. 4), is granted.

(2) Plaintiff David Larry Nelson's complaint, filed on October 6, 2003 (Doc. No. 1), as amended on October 7, 2003 (Doc. No. 10), is dismissed without prejudice.

It is further ORDERED that costs are taxed against plaintiff Nelson, for which execution may issue.

The clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.